364 A.2d 322

COMMONWEALTH of Pennsylvania

v.

Anthony DORIA, Appellant.

Supreme Court of Pennsylvania.

Argued Jan. 23, 1976.

Decided Oct. 8, 1976.

Norris E. Gelman, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

MANDERINO, Justice.

In 1960, appellant, who has no other criminal record, was convicted of obtaining a loan under false pretenses and of fraudulent conversion. Post-verdict motions were argued and denied, and on appeal, the conviction was affirmed by the Superior Court. *Commonwealth v. Doria,* 193 Pa.Super. 206, 163 A.2d 918 (1960). A petition for allowance of appeal from the Superior Court to this Court was filed and subsequently denied by this Court. Appellant paid fines of $150 on each count, thereby completely complying with the judgment of sentence.

On May 30, 1974, appellant filed a petition pursuant to the Post Conviction Hearing Act, Act of January 25, 1966, P.L. (1965) 1580, § 1 et seq., 19 P.S. § 1180–1. In

his petition he alleged that the 1960 conviction was based solely on perjured evidence; that he was denied his right to remain silent at trial; that he was denied his constitutional right to representation by effective counsel; that the trial judge improperly prejudiced the case because the trial judge had previously represented the prosecution's only witness; and that he had suffered collateral civil consequences as the result of the 1960 conviction. In its answer the prosecution denied appellant's substantive claims, but indicated that appellant had stated facts which, if proven, would warrant relief. The prosecution recommended that a hearing be held to determine the accuracy of appellant's allegations.

On June 28, 1974, appellant's petition was dismissed by the trial court without an evidentiary hearing. Basing its decision on *Commonwealth v. Sheehan*, 446 Pa. 35, 285 A.2d 465 (1971), the court refused to consider the merits of appellant's claim. *Sheehan*, the trial court concluded, held that appellant's claims were moot. Timely appeal from the trial court's order was taken to the Superior Court, which on February 27, 1975, affirmed the order in a 4 to 3 decision (JJ. Hoffman, Cercone, and Spaeth dissenting), holding that appellant's case was moot because he was not presently suffering any direct criminal consequences as the result of his conviction. *Commonwealth v. Doria*, 232 Pa.Super. 439, 335 A.2d 472 (1975). We granted appellant's petition for allowance of appeal on June 19, 1975, and this appeal followed.

 ▉▉ The question presented by this appeal is whether one who has completed a criminal sentence, and who is not presently in danger of suffering any collateral criminal sanctions as a result of that conviction, can challenge the propriety of the conviction in a post conviction hearing pursuant to the Post Conviction Hearing Act, Act of January 25, 1966, P.L. (1965) 1580, § 3, 19 P.S. § 1180–3, or whether the doctrine of mootness should, standing by itself, support the denial of the PCHA petition. Stat-

ed otherwise, should this Court extend the holding of *Commonwealth v. Sheehan,* supra, 446 Pa. 35, 285 A.2d 465 (1971), to a case which, although not involving direct *criminal* consequences, does involve direct collateral *civil* consequences. The majority of the Superior Court, refused to so extend *Sheehan.* The dissenters on the Superior Court, quoting from a footnote in *Sheehan,* supra, indicating that recent United States Supreme Court cases "seem to stand for the proposition that the possibility of either civil or criminal collateral consequences forecloses application of the mootness doctrine," 232 Pa.Super. at 446, 335 A.2d at 476, concluded that appellant has a substantial stake in his conviction, that that stake had survived the satisfaction of the judgment of sentence, and that the doctrine of mootness therefore should not apply to deprive appellant of the right to challenge his conviction. We agree with the dissenters in the Superior Court, and reverse and remand the case for an evidentiary hearing.

In *Commonwealth v. Sheehan,* supra, 446 Pa. 35, 285 A.2d 465 (1971), this Court carefully analyzed the question of whether satisfaction of the judgment of sentence renders an allegedly invalid conviction moot. Our analysis included an examination of the three general theories with respect to the availability of collateral relief following full satisfaction of sentence, and their application to the mootness doctrine. These views were stated by the *Sheehan's* court as follows:

"(1) The 'traditional' view that satisfaction of the contested sentence, per se, rendered the case moot;

(2) The 'liberal' view that the petitioner's interest in clearing his name, per se, permits review or attack upon the conviction; and

(3) the modified traditional view that satisfaction of the sentence renders the case moot unless, in consequence of the conviction and sentence, the petitioner

suffers collateral legal disabilities or burdens, surviving the satisfaction of the sentence, sufficient to give petitioner standing to attack his conviction."

*Id.* at 41, 285 A.2d at 468.

Prior to our ruling in *Commonwealth ex rel. Ulmer v. Rundle,* 421 Pa. 40, 218 A.2d 233 (1966), Pennsylvania followed the so-called "traditional" rule. The *Ulmer* decision introduced the "collateral criminal consequences" rule, and allowed an attack on a prior criminal conviction where the conviction directly affected sentences *presently being served* by the petitioner. *Commonwealth v. Sheehan,* allowed a hearing on a post-conviction challenge to a conviction where the petitioner had been subsequently arrested and had good reason to believe that, if convicted, he would face a prison sentence since a subsequent conviction would render him a second offender, and because the trial court in which petitioner was convicted had established a policy of imposing sentences of imprisonment for a second offense on drunk driving charges, whereas, first offenders were subjected only to fine. Thus, in both *Ulmer,* supra, and *Sheehan,* supra, criminal consequences existed. It is conceded by appellant in the present case that no criminal consequences exist here.

In his PCHA petition, however, appellant alleged the existence of severe civil and social consequences, including but not limited to, the forced resignation of his position as Dean of the Vermont Law School, voting restrictions in several states, and the fear of being impeached should he ever testify on his own behalf or on behalf of someone else in a trial court case. Appellant now argues that *Sheehan* should be extended to permit a challenge to convictions where the sentence has been satisfied if collateral civil consequences are shown to flow from said conviction.

We agree that the rationale of *Sheehan,* supra, applies to collateral attack upon convictions from which direct

civil consequences are shown to flow. Several reasons compel this conclusion. First, *Sheehan* dealt with a factual setting which did not require an answer to the question presented by the instant appeal. The *Sheehan* court adopted the position it did simply because that was all that was required by the facts of the case before it. The *Sheehan* opinion, however, indicates that the court was aware of the possibility that a case such as this might arise, and hinted at least, at the position which this Court would adopt if, and when, such a case came before us. By taking the position it did, the *Sheehan* court was by no means implicitly rejecting the more liberal view as to the applicability of the mootness doctrine to cases where the judgment of sentence had been satisfied. As stated in *Sheehan,* "[t]hree recent [U.S.] Supreme Court cases, *Carafas v. La Vallee,* 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968); *Sibron v. New York,* 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); *Street v. New York,* 394 U.S. 576, 579 n. 3, 89 S.Ct. 1354, n. 3, 22 L. Ed.2d 572, 578, n. 3 (1969) seem to stand for the proposition that possibility of the *either civil or criminal* collateral consequences foreclose application of the mootness doctrine." (Emphasis added.)

*Id.* at 42–43, n. 9, 285 A.2d at 469, n. 9.

Our conclusion is further compelled by our recognition that civil consequences resulting from an allegedly invalid conviction can be just as severe, and often are more severe, than the criminal consequences which dictated the position adopted in *Sheehan.* Who can say that simply because the consequences were civil rather than criminal in nature, appellant Doria's stake in having the 1960 conviction overturned is not as great as was Sheehan's interest in having his first drunk driving conviction reversed. In the instant case it is alleged, among other things, that as a direct result of the allegedly invalid 1960 conviction, the petitioner was forced to resign his position as Dean of the Vermont Law School. We are not prepared to

conclude that a lifetime of forced unemployment, or employment in a job other than in one's chosen profession, is a consequence any less severe than an additional few weeks incarceration. Nor are we prepared to hold that drawing the dividing line between civil and criminal consequences flowing from an allegedly invalid conviction is the only rational place to do so. In an earlier day, cutting off review when challenged convictions did not result in criminal consequences may have provided a reasonable end to litigation while imposing no undue burden on individual rights. With the advent of computer technology, however, and the great increase in the number of persons whose qualifications will be reviewed by professional and academic societies, it can no longer be said that precluding review where no criminal consequences exist places no undue burden on an individual's rights. People today will repeatedly be asked by employers, by professional and academic societies, by lending institutions, and by others if they have ever been convicted of a crime. Frequently, the question will be asked of a computer without the knowledge of the person involved and frequently an unreversed conviction—even if achieved without due process or if otherwise fatally flawed—can cause a potential employer to select another candidate; can bar access to professional associations to which one must belong before one can practice a chosen profession; can result in the refusal to grant a loan which might otherwise have been given.

In *Commonwealth v. Sheehan,* supra, 446 Pa. 35, 285 A.2d 465 (1971), we recognized that the Post Conviction Hearing Act was not intended " . . . to abolish the common law remedies of habeas corpus and coram nobis . . . ," and that a petition under the Act " . . . may properly be considered and treated as a petition for a writ of error coram nobis." *Id.* at 39 and 41, 285 A.2d at 467 and 468. As a result, *Sheehan* allowed an attack upon an earlier drunken driving conviction by one again

so charged since a second offender would be subject to a greater penalty. In doing so, we recognized that such an attack was not a traditional application of the writ of coram nobis, but concluded that the writ should be made available to correct errors for which the statutes in force provided no remedy. This conclusion was buttressed by the language of the Post Conviction Hearing Act itself, an act designed to establish

" . . . a post-conviction proceeding for providing relief from convictions obtained and sentences imposed without due process of law. The procedure hereby established shall encompass all common law and statutory procedures for the same purpose that exist when the statute takes effect, including habeas corpus and coram nobis." Act of January 25, 1966, P.L. (1965) 1580, § 2 (19 P.S. § 1180–2).

Our holding today gives those who can show that they have suffered collateral consequences as the result of a wrongful criminal conviction, and who have not been charged with any other criminal conduct, the same right to challenge the allegedly wrongful conviction as is afforded those who seek to challenge a previous conviction because of the adverse effect it will have upon a subsequent accusation of criminal activity. Surely, one who has led an exemplary life since being found guilty of a crime, should receive no less consideration from the courts of this Commonwealth than one who is being subjected to a second criminal prosecution.

We are not persuaded by the prosecution's assertion that the petitioner seek an executive pardon as a means of removing most, if not all, of the civil consequences flowing from his conviction. As the prosecution candidly admits, a pardon would not remove all disabilities which might result from a prior invalid conviction, and the possibility of a grant of an executive pardon does not relieve this Court of its responsibility to correct prior erroneous judgments.

542

■ The prosecution also argues that appellant should be estopped from raising the alleged invalidity of the 1960 conviction on a theory of laches because he waited fourteen years before seeking such relief. The concept of laches is a defense applicable only to equity proceedings. *Bauer v. P. A. Cutri Co.*, 434 Pa. 305, 253 A.2d 252 (1969). It has no place in the criminal law. If appellant can establish that his prior conviction resulted from perjured testimony, he is entitled to have that conviction overturned.

The order of the Superior Court affirming the trial court's dismissal of appellant's Post Conviction Hearing Act petition without a hearing is reversed, and the matter is remanded for further proceedings consistent with this opinion.

EAGEN, J., concurs in the result.

JONES, C. J., dissents.