502 A.2d 195

**COMMONWEALTH of Pennsylvania**

**v.**

**James TAYLOR, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 3, 1985.

Filed Nov. 29, 1985.

258

Norris E. Gelman, Philadelphia, for appellant.

Robert B. Lawler, Assistant District Attorney, Philadelphia, for Com., appellee.

Before JOHNSON, HOFFMAN and CERCONE, JJ.

HOFFMAN, Judge:

This is an appeal from the lower court's order denying appellant's petition for relief under the Post Conviction Hearing Act (PCHA), 42 Pa.C.S.A. §§ 9541–51. Appellant contends that (1) the lower court erred in dismissing his petition under the doctrines of waiver and laches; (2) use of a waiver or laches doctrine to bar consideration of his PCHA claims would unconstitutionally limit his right to redress by habeas corpus; and (3) his trial counsel was ineffective in failing (a) to request an "imperfect self-defense" voluntary manslaughter jury instruction, and to object to the court's omission thereof in its charge, and (b) to object to the prosecutor's attempt to undermine the credibility of the "star" defense witness. For the following reasons, we find that, while the lower court erred in finding that waiver and laches barred appellant's PCHA claims from consideration, the lower court correctly found no basis upon which to afford appellant relief. Accordingly, we affirm the order of the court below.

On September 1, 1971, appellant was arrested and charged with murder and aggravated robbery in connection with the killing of Robert Morgan. Following a March 7–14, 1973 jury trial, appellant was found guilty of first degree murder and aggravated robbery. He was sentenced to concurrent terms of life imprisonment for the murder charge and eight-to-twenty years for the robbery charge. Our Supreme Court reversed both convictions and granted appellant a new trial. *Commonwealth v. Taylor*, 475 Pa. 564, 381 A.2d 418 (1977). On March 13, 1978, a second jury found appellant guilty of the same crimes, and again appellant received concurrent terms of life imprisonment for first degree murder and eight-to-twenty years for aggravated robbery. Our Supreme Court affirmed the judgment of sentence. *Commonwealth v. Taylor*, 489 Pa. 519, 414 A.2d 1012 (1980). On July 6, 1983, appellant, through present counsel, filed a PCHA petition (his first). A hearing to determine whether appellant's petition should be dismissed due to untimeliness was held on November 28, 1984. On March 1, 1985, the PCHA court denied appellant all relief, and this appeal followed.

Appellant first contends that the lower court erred in dismissing his petition on the bases of waiver and laches. We agree. The Post Conviction Hearing Act provides that, "[s]ubject to the provisions of [§ 9545(c)], [any person who desires to obtain relief under the Act] may file a petition *at any time.*" 42 Pa.C.S.A. § 9545(a) (emphasis added). Section 9545(c), in turn, requires a petitioner to set forth "all ... then available grounds for ... relief" because, otherwise, "[t]he failure to raise any issue in the petition shall be deemed a waiver of any right to *future presentation of another petition* containing grounds for relief that were available and could have been presented." (Emphasis added). Thus, a reading of the plain language of the Act, *see* 1 Pa.C.S.A. § 1921(b), compels the conclusion that a defendant's *first* PCHA petition can be filed at any time following conviction.

Our Supreme Court's decision in *Commonwealth v. Doria,* 468 Pa. 534, 364 A.2d 322 (1976), supports this result. There, the Commonwealth contended that laches precluded the defendant from challenging the validity of his conviction because he waited fourteen years before seeking relief. The Court held that laches "has no place in the criminal law. If [the defendant] can establish that his prior conviction resulted from perjured testimony, he is entitled to have that conviction overturned." *Id.,* 468 Pa. at 542, 364 A.2d at 326. Doria's petition, like appellant's here, was his first. Furthermore, we note that appellant filed his petition just over three years after our Supreme Court affirmed his convictions.

■ The lower court, however, relied upon *Commonwealth v. Kale,* 312 Pa.Superior Ct. 69, 458 A.2d 239 (1983), *allocatur denied,* in holding that waiver precluded it from considering appellant's PCHA claims because the petition was untimely filed. *Kale* is distinguishable. There, the petitioner appealed from a lower court order denying four of his five PCHA petitions, in each of which he sought to withdraw a separate guilty plea. Kale had not appealed from the four judgments of sentence entered after each plea. This Court held that, because "[h]e ... failed completely to explain the delays, which var[ied] from 7 years, 6 months to 2 years, 10 months, in filing requests to withdraw these pleas of guilty," a consideration of the merits of the claims asserted in his PCHA petitions was barred. *Id.,* 312 Pa.Superior Ct. at 72, 458 A.2d at 241. Thus, *Kale* does not stand for the proposition that unexplained delay in filing a PCHA petition bars consideration of the claims raised therein, but rather holds that, when attempting to withdraw a guilty plea either after sentencing or collaterally, a defendant must explain any delays in filing his *requests to withdraw.* Indeed, the cases cited by the *Kale* court in support of its holding involved the filing of petitions to withdraw guilty pleas after sentencing, *not* PCHA petitions. *See Commonwealth v. Shaffer,* 498 Pa. 342, 446 A.2d 591 (1982); *Commonwealth v. Minarik,* 493 Pa. 573,

427 A.2d 623, *cert. denied,* 454 U.S. 859, 102 S.Ct. 313, 70 L.Ed.2d 156 (1981).

■ Our holding today in no way affects those cases cited by the Commonwealth which hold that an unexplained delay in filing a PCHA petition is a factor to be considered in assessing the merits of the *issues raised in* the petition. *See Commonwealth v. Hudson,* 336 Pa.Superior Ct. 174, 177, 485 A.2d 487, 489 (1984); *Commonwealth v. Jackson,* 329 Pa.Superior Ct. 293, 298, 478 A.2d 474, 477 (1984); *Commonwealth v. Kenney,* 317 Pa.Superior Ct. 175, 177 n. 1, 463 A.2d 1142, 1143 n. 1 (1983); *Commonwealth v. Courts,* 315 Pa.Superior Ct. 124, 134, 461 A.2d 828, 833 (1983); *Commonwealth v. Strickland,* 306 Pa.Superior Ct. 516, 526, 452 A.2d 844, 849 (1982), *allocatur denied.*[1] We should take care, then, to distinguish between finding a petitioner's claims meritless based, in part, on delay in filing a PCHA petition, and dismissing a first PCHA petition without considering the claims raised therein (either on their merits, or finding them finally litigated or waived under 42 Pa.C.S.A. § 9544). The latter is inappropriate. Therefore, we find that the lower court erred in finding appellant's claims barred from consideration by laches and waiver. Thus, we turn to a consideration of the substantive issues raised in appellant's petition.[2]

1. The underlying support for these cases is questionable. They have their genesis in *Commonwealth v. Alexander,* 495 Pa. 26, 432 A.2d 182 (1981) (opinion announcing the judgment of the court), which stated that "[t]he length of time between the occurrence of the asserted error and the filing of the petition, and the explanation for any delay," was a factor in determining whether a hearing should be held on a *second* (or a later successive) petition and whether "extraordinary circumstances" exist under 42 Pa.C.S.A. § 9544(b)(2) (then 19 P.S. 1180–4(b)(2)) excusing the failure to preserve an issue for review in such later petitions. *Id.,* 495 Pa. at 36, 432 A.2d at 186–87. The latter is completely consistent with the § 9545(c) language quoted above. Nowhere does *Alexander* state that a delay in filing a petition should be considered in assessing the *merits* of issues raised in a successive (let alone a first) petition; instead, delay is a factor to consider in determining whether issues raised in successive petitions are *waived.*

2. In light of our disposition of appellant's first contention, we need not address the second.

 Appellant next contends that his previous (second trial) counsel was ineffective.[3] In reviewing a claim of ineffectiveness, we first determine whether the claim that counsel failed to pursue is of arguable merit. If it is, then we must next determine whether counsel's particular course of action had some reasonable basis designed to effectuate the client's interest. Even if counsel's choice of action had no reasonable basis, "[a] finding that appellant is entitled to a new trial cannot be made unless it can be concluded that the alternatives not chosen offered a potential for success substantially greater than the tactics actually utilized, resulting in prejudice to the defendant." *Commonwealth v. Garvin*, 335 Pa.Superior Ct. 560, 566, 485 A.2d 36, 39 (1984) ( *en banc* ) (plurality); *see also Commonwealth v. Larkins*, 340 Pa.Superior Ct. 56, 69–70, 489 A.2d 837, 844 (1985). Appellant has failed to meet this burden here.

Appellant's first allegation of trial counsel's ineffectiveness is his failure to request an "imperfect self-defense" voluntary manslaughter jury instruction and to object to the court's omission of the defense in its charge. He argues that our Supreme Court's decision in *Commonwealth v. Jones*, 457 Pa. 563, 319 A.2d 142, *cert. denied sub nom. Jones v. Pennsylvania*, 419 U.S. 1000, 95 S.Ct. 316, 42 L.Ed.2d 274 (1974), mandates the granting of a new trial for cases tried under the 1939 Penal Code when a trial court refuses to so charge after such a defense request. *Jones* held that "a defendant under indictment of murder will be entitled, *upon request,* to have the jury advised of its power to return a verdict of voluntary manslaughter." *Id.*, 457 Pa. at 573–74, 319 A.2d at 148 (emphasis in original). *But cf. Commonwealth v. Carter*, 502 Pa. 433, 466 A.2d 1328 (1983) (under 1972 Crimes Code, "unreasonable belief" manslaughter charge shall be given only when requested, where offense is an issue in the case, and where evidence would reasonably support such a verdict). A defendant was so entitled regardless of whether there was evidence to sup-

---

**3.** The lower court considered appellant's PCHA claims in the alternative. It found that "prior counsel competently and effectively represented [him] at all relevant times." (Lower Court Opinion at 5).

port the jury charge. *Commonwealth v. Jones, supra* 457 Pa. at 573, 319 A.2d at 148. The charge allowed the jury, if it so chose, to use its "historically recognized mercy dispensing power" to find a defendant guilty of a lesser degree murder. *Id.*, 457 Pa. at 572, 319 A.2d at 148.

█ Here, even assuming, *arguendo*, that this claim has arguable merit and counsel had no reasonable basis designed to effectuate appellant's interests in his failure to insure that the court charged the jury on "imperfect self-defense," appellant has utterly failed to establish how he was prejudiced thereby. In *Jones*, the Court refused to grant relief because

> [i]t [was] clear ... that [the defendant] did not suffer prejudice from the refusal of such an instruction in view of the jury's decision to ignore their right to return a verdict of second degree. There [was] not the slightest reason to believe that the jury would have returned a verdict of voluntary manslaughter out of sympathy or in recognition of factors that they may have deemed mitigating where these factors were not sufficiently compelling to cause them to elect the lesser alternative that was offered.

*Id.*, 457 Pa. at 574, 319 A.2d at 148 (footnote omitted). The same reasoning applies with equal, if not greater, force, here. While in *Jones* the court charged the jury only on first and second degree murder, here the court charged the jury on first and second degree murder, voluntary manslaughter (passion), and involuntary manslaughter, *see* N.T. March 13, 1978 at 4.118–.125, yet the jury returned a verdict of guilty of first degree murder, *id.* at 4.144. Therefore, we agree with the Commonwealth that the jury did not exercise its mercy dispensing power. *See also Commonwealth v. Carter, supra*, 502 Pa. at 441, 466 A.2d at 1331–32 (where trial court instructed on "heat of passion," but not "unreasonable belief," voluntary manslaughter, and jury returned a verdict of guilty of third degree murder, no reason to believe jury would have exercised its mercy dispensing power if court charged on "unreasonable be-

lief"). Accordingly, we find that appellant suffered no prejudice from the court's failure to instruct on "imperfect self-defense," and counsel cannot be deemed ineffective in failing to insure such a charge.[4]

Appellant next alleges that his trial counsel was ineffective in failing to object to the prosecutor's attempt to undermine the credibility of the "star" defense witness, Margaret Gates, an eyewitness to the murder in question. He points to the following exchange:

Q. Good afternoon, Mrs. Gates.

Ma'am, isn't it true that approximately three weeks ago, you failed to respond to a subpoena to come to the District Attorney's Office, that you talked to some people at the District Attorney's Office, told us that you would be in and never showed up. Is that true?

A. I was subpoenaed?

Q. No, I am saying, you talked to detectives on the telephone and we asked you to come into the District Attorney's Office to talk to us.

(N.T. March 10, 1978 at 3.49). Appellant argues that the district attorney's office has no such subpoena power, and that, by giving the appearance that the witness was under subpoena and failed to respond to the same, the prosecution damaged her credibility. This claim is meritless.

It is true that "[n]o individual, including a district attorney or even the Commonwealth's Attorney General has the power to *issue* subpoenas without statutory authority; this power is solely a judicial one in the absence of statute." *Carabello Appeal*, 238 Pa.Superior Ct. 479, 483 n. 4, 357 A.2d 628, 631 n. 4 (1976) (emphasis in original). *See also Commonwealth ex rel. Margiotti v. Orsini*, 368 Pa. 259, 81 A.2d 891 (1951) (Attorney General cannot issue subpoenas to witnesses to appear at his offices). Furthermore, if it was the Commonwealth's intention to impeach Mrs. Gates,

---

4. Of course a charge would be required if imperfect self-defense had been an issue in this case and there was evidence to support such a verdict. As appellant candidly admits, however, in his "case there was no evidence at all of any species of voluntary manslaughter...." (Brief for Appellant at 12 n. 2).

it did not use one of the accepted means of doing so. *See generally* A. Jenkins, *Pennsylvania Trial Evidence Handbook* § 17.1 at 297 (1974). Certainly there is no hint here that Mrs. Gates was in any way prejudiced or biased against the Commonwealth or had any interest in favor of appellant. *See* N.T. March 10, 1978 at 3.48 (witness testifying that she did not know appellant). Nor is there anything in the record to support an inference that Mrs. Gates was "hiding" something; she did give a statement to the police after witnessing the crime. *See id.* at 3.47–.48.

■ Nonetheless, the above quote belies appellant's argument. The assistant district attorney immediately corrected himself by answering "no" to Mrs. Gates's question, "I was subpoenaed?" An objection by defense counsel would have only further highlighted the remark. The determination as to when to interpose objections is a matter within trial counsel's province. *Commonwealth v. Norris,* 305 Pa.Superior Ct. 206, 215, 451 A.2d 494, 498 (1982). Furthermore, reviewing the entire exchange between the witness and the assistant district attorney, we note that Mrs. Gates testified that she never talked to anyone at the district attorney's office because no set arrangements were ever made for her to do so. *See* N.T. March 10, 1978 at 3.49–.50. We fail to see how Mrs. Gates's credibility was damaged, or appellant's case prejudiced, by this testimony indicating that a witness to the crime failed to speak to detectives at the district attorney's office when there was never an appointment for her to do so. *Cf. Commonwealth v. Rodgers,* 472 Pa. 435, 458–59, 372 A.2d 771, 782 (1977) (questions concerning witnesses' failure to "come forward" were proper where such failure could support an inference that the witnesses' alibi testimony was fabricated for trial). Therefore, we cannot find counsel ineffective on this ground.

For the foregoing reasons, then, we affirm the lower court's order denying appellant PCHA relief.

Order affirmed.