501 A.2d 1137

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**George MARKLEY, Appellant.**

Superior Court of Pennsylvania.

Submitted Aug. 5, 1985.

Filed Dec. 6, 1985.

Joseph P. Martone, Erie, for appellant.

Michael R. Cauley, Assistant District Attorney, Erie, for Commonwealth, appellee.

Before WIEAND, POPOVICH and LIPEZ, JJ.

WIEAND, Judge:

This appeal is from an order dismissing appellant's P.C. H.A. petition on grounds that it became moot after he had

served the sentence imposed. We conclude that the requested relief is not moot and reverse.

George Markley, represented by an assistant public defender, was tried by jury and found guilty of three counts of theft by deception and one count of issuing a bad check. Post-trial motions were filed, but they were dismissed by the trial court. On March 28, 1983, prior to sentencing, Markley requested that his trial counsel be removed and new counsel appointed. On April 4, 1983, still represented by an assistant public defender, Markley was sentenced to pay a fine of $500.00 and undergo imprisonment for not less than one nor more than two years. Thereafter, the court entered an order removing trial counsel, retroactive to April 4, 1983. The court neglected to appoint new counsel, however, until after the time for appeal had expired.

Five days after the appeal period expired, on May 9, 1983, Markley filed pro se a P.C.H.A. petition in which he alleged, inter alia, that he had been denied his right of appeal and that his trial counsel had rendered ineffective assistance. On May 16, 1983, the trial court signed an order appointing new counsel and allowing an appeal to the Superior Court nunc pro tunc. His P.C.H.A. petition was dismissed because of the anticipated appeal. A direct appeal, however, was never perfected.

Markley was released from prison and was placed on parole on August 31, 1983. He completed his parole on June 22, 1984.

On July 27, 1984, Markley filed an amended P.C. H.A. petition which, inter alia, restated the averments in his first petition that he had been deprived of his right of appeal and had received ineffective assistance from trial counsel.[1] At a hearing on February 4, 1985, the Common-

---

1. The Commonwealth argues that Markley waived his right to pursue P.C.H.A. relief by failing to file a timely appeal from the Court's denial of his *pro se* P.C.H.A. petition. Brief for Appellee at 10. We find this argument unpersuasive. In order for an issue to be regarded as finally litigated within the meaning of the P.C.H.A., there must be a ruling on the merits of the issue. *Commonwealth v. Nelson,* 337

wealth argued that the P.C.H.A. petition was moot because Markley had completed his sentence and was not then on probation or parole. After taking testimony on the issue of mootness, the hearing court found that Markley was not in danger of severe civil or social consequences as a result of his earlier conviction and dismissed his petition on grounds that it had become moot. On appeal therefrom, Markley contends that the P.C.H.A. court was in error when it found his petition moot and that this Court should remand for an evidentiary hearing on issues raised in his amended P.C. H.A. petition.

To be eligible for relief according to the language of the Post Conviction Hearing Act, a person must show "that he has been convicted of a crime" and "that he is incarcerated in this Commonwealth under a sentence of death or imprisonment or on probation or parole." 42 Pa.C.S. § 9543(1), (2). In a series of cases beginning with *Commonwealth ex rel. Ulmer v. Rundle*, 421 Pa. 40, 218 A.2d 233 (1966), however, the Supreme Court of this Commonwealth has modified the statutory requirement that a petitioner be incarcerated or on probation or parole at the time his petition is reviewed.

In *Ulmer*, the defendant had been convicted and sentenced to prison after violating the terms of probation imposed for a prior offense. During parole from this sentence for probation violation, he was convicted and sentenced for committing a new crime, the sentence to run consecutively with the sentence for probation violation. Ulmer was also convicted and sentenced for a third offense, the sentence for which was to begin at the expiration of all

Pa.Super. 292, 299, 486 A.2d 1340, 1343 (1984); *Commonwealth v. Jenkins*, 316 Pa.Super. 167, 171, 462 A.2d 847, 849 (1983); 28 Standard Pennsylvania Practice 2d § 138.12 (1982). In the instant case, the P.C.H.A. court clearly did not dismiss Markley's *pro se* P.C.H.A. petition on the merits, but merely denied it at that time because it was "premature." Moreover, even if the P.C.H.A. court's order were to be considered a dismissal of Markley's *pro se* petition, the appellant's apparent lack of counsel at the time of the court's action would constitute an extraordinary circumstance precluding a waiver of his P.C.H.A. allegations. See: *Commonwealth v. Hobson*, 286 Pa.Super. 271, 274, 428 A.2d 987, 989 (1981).

preceding sentences. The state parole board recommitted Ulmer for violating his parole and directed that he serve the balance of his original sentence for probation violation. After he had served this sentence, Ulmer commenced an action for habeas corpus. He alleged that his conviction for probation violation was invalid because he had been denied the right to counsel. The Supreme Court rejected a contention that the petition was moot, for Ulmer's invalid conviction would directly affect the duration of the subsequent valid sentences.

*Ulmer* was followed five years later by *Commonwealth v. Sheehan*, 446 Pa. 35, 285 A.2d 465 (1971). Sheehan had been convicted in 1963 of driving while under the influence of alcohol and had paid a fine. Five years later, Sheehan was again arrested for driving while intoxicated. He was informed prior to trial that the local penalty for a second drunk driving offense would be a $200 fine, plus the costs of the prosecution, and three months in prison. Sheehan filed a P.C.H.A. petition alleging that his prior conviction in 1963 was invalid because he had not been represented by counsel. The P.C.H.A. court dismissed the petition, holding that because Sheehan had completely satisfied the sentence imposed in 1963, the validity of the prior conviction had become a moot issue. The Superior Court affirmed, limiting the *Ulmer* decision to its specific facts, i.e., where a petitioner is serving a legal sentence immediately following an invalid sentence.

The Supreme Court rejected this limitation of its holding in *Ulmer*. Instead, the Court announced a "collateral criminal consequences" rule. *Commonwealth v. Sheehan, supra*, 446 Pa. at 42, 285 A.2d at 468. This rule allowed "an attack on a satisfied sentence which is shown to affect directly any subsequent criminal prosecution or conviction." *Id.*, 446 Pa. at 42, 285 A.2d at 469. Relying on decisions of the United States Supreme Court,[2] the Court held that a

2. *Carafas v. LaVallee*, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968); *Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917

*possibility* that Sheehan might be classified as a second offender and thereby subjected to a harsher penalty was itself a collateral criminal consequence sufficient to prevent his P.C.H.A. petition from being moot. The Court added by way of dictum that in light of the cited federal decisions, the *possibility* of *either civil or criminal* collateral consequences ought to be sufficient to prevent a collateral attack from being held moot. *Id.*, 446 Pa. at 42–43 n. 9, 285 A.2d at 469 n. 9 (emphasis added).

In *Commonwealth v. Doria*, 468 Pa. 534, 364 A.2d 322 (1976), the defendant had been convicted of obtaining a loan under false pretenses and also of fraudulent conversion. He had satisfied the judgment of sentence by paying fines of $150 on each count. He later filed a P.C.H.A. petition attacking his conviction. The P.C.H.A. court dismissed the petition without hearing on grounds that it was moot. Doria argued to the Supreme Court that he had suffered severe social and civil consequences as a result of his conviction, "including but not limited to, the forced resignation of his position as Dean of the Vermont Law School, voting restrictions in several states, and the fear of being impeached should he ever testify on his own behalf or on behalf of someone else in a trial court case." *Commonwealth v. Doria, supra*, 468 Pa. at 538, 364 A.2d at 324. Building upon its prior decision in *Commonwealth v. Sheehan, supra*, the Court expanded the parameters of the collateral consequences rule to include direct civil consequences. The Court said:

> We are not prepared to conclude that a lifetime of forced unemployment, or employment in a job other than in one's chosen profession, is a consequence any less severe than an additional few weeks incarceration. Nor are we prepared to hold that drawing the dividing line between civil and criminal consequences flowing from an allegedly invalid conviction is the only rational place to do so. In an earlier day, cutting off review when challenged convic-

(1968); *Street v. New York,* 394 U.S. 576, 579 n. 3, 89 S.Ct. 1354 n. 3, 22 L.Ed.2d 572, 578 n. 3 (1969).

tions did not result in criminal consequences may have provided a reasonable end to litigation while imposing no undue burden on individual rights. With the advent of computer technology, however, and the great increase in the number of persons whose qualifications will be reviewed by professional and academic societies, it can no longer be said that precluding review where no criminal consequences exist places no undue burden on an individual's rights. People today will repeatedly be asked by employers, by professional and academic societies, by lending institutions, and by others if they have ever been convicted of a crime. Frequently, the question will be asked of a computer without the knowledge of the person involved and frequently an unreversed conviction—even if achieved without due process or if otherwise fatally flawed—can cause a potential employer to select another candidate; can bar access to professional associations to which one must belong before one can practice a chosen profession; can result in the refusal to grant a loan which might otherwise have been given.

*Id.*, 468 Pa. at 539–540, 364 A.2d at 325. Because Doria had suffered a direct, disabling consequence of his conviction by being compelled to resign from his position as Dean of Vermont Law School, this was adequate, the Court held, to prevent the issues raised in Doria's P.C.H.A. petition from being moot.

Finally, in *Commonwealth v. Rohde*, 485 Pa. 404, 402 A.2d 1025 (1979), the Court extended Pennsylvania's collateral consequences doctrine to embrace the federal approach in its entirety. Leland Rohde had entered a plea of *nolo contendere* to a charge of possessing amphetamines. He had been given a ninety day suspended sentence and had been fined $300. After failing to appeal the judgment of sentence, Rohde filed a P.C.H.A. petition in which he contended that he had not been informed of his right to appeal and that his plea of *nolo contendere* had not been knowingly entered. The P.C.H.A. court dismissed the petition on grounds of mootness because Rohde was not subject to a

continuing disability as a result of his conviction. Rohde appealed to the Superior Court, which remanded to the P.C.H.A. court for reconsideration in light of the Supreme Court decision in *Commonwealth v. Doria, supra.* The P.C.H.A. court again dismissed Rohde's petition, holding that because Rohde had shown only the possibility, not the actuality, of social and civil disabilities, *Doria* was inapplicable. Under these circumstances, the court concluded, Rohde lacked standing to challenge his conviction. The Supreme Court, after reexamining its earlier decisions, determined that there was

> ... no logical reason for not extending *Doria* in the same way *Sheehan* extended *Commonwealth ex rel. Ulmer v. Rundle, supra,* i.e., from a showing of direct consequences resulting from a conviction to a *mere showing of the possibility of consequences.* If the possibility of consequences is sufficient to avoid mootness in subsequent criminal actions ... the same possibilities should have the same effect on the mootness issue where *social and civil consequences* are involved.

*Rohde, supra,* 485 Pa. at 408, 402 A.2d at 1027 (emphasis added). The Court held, therefore, that the mere anticipation by Rohde that he would encounter "possible difficulty" in being admitted to the practice of law was sufficient social or civil disability to establish standing to challenge his prior plea of *nolo contendere.*[3]

█ In the instant case, Markley identified various social and civil consequences that might attend his convictions for theft by deception and writing a bad check. He argued to the P.C.H.A. court that as a result of his conviction, (1) he

---

3. The "possible social or civil consequences" doctrine espoused in *Commonwealth v. Rohde,* stands in sharp contrast to traditional standards employed in Pennsylvania for determining standing and mootness. See: *Franklin Township v. Department of Environmental Resources,* 499 Pa. 162, 165–166, 452 A.2d 718, 719 (1982) (re standing; a party must have a substantial interest in the subject matter of the litigation, and that interest must be direct, immediate, and not a remote consequence); *Silver v. Zoning Board of Adjustment,* 381 Pa. 41, 46, 112 A.2d 84, 87 (1955) (re mootness; the court should not render advisory decisions on hypothetical facts).

had been denied the opportunity to continue a self-owned construction business while incarcerated and had been unable to work following his release from prison; (2) his relationships with members of his family had deteriorated; (3) his reputation within the community had been adversely affected; (4) he had lost the benefit of a seven year period in which he had no record of criminal activity; and (5) he would be subject to harsher penalties under the sentencing guidelines if he were later convicted of another offense. The P.C.H.A. court concluded that Markley's lack of employment opportunities were not caused by his conviction and, in light of Markley's extensive criminal record, that the remainder of his contentions lacked merit. Markley argues on appeal that the Supreme Court's holding in *Rohde, supra,* which was neither discussed nor cited by the P.C.H.A. court, requires that we reverse the dismissal of his petition on grounds of mootness. We are constrained to agree.

In *Commonwealth v. Doria, supra,* the Supreme Court envisioned that possible civil consequences of a conviction might well include the denial of employment opportunities, of access to professional associations, or of disallowed loan applications that might otherwise have been approved. *Id.,* 468 Pa. at 540, 364 A.2d at 325. In *Commonwealth v. Rohde, supra,* the Court extended the collateral consequences rule to accommodate *social* disabilities which might arise from a conviction. However, the Supreme Court did not then establish guidelines for determining social and civil consequences which would be sufficient to avoid dismissal on grounds of mootness. For insight regarding the parameters of the collateral consequences doctrine, therefore, we examine the federal decisions from which the present rule in Pennsylvania has evolved.

The leading case is *Sibron v. New York,* 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). There, the defendant had been convicted of the unlawful possession of heroin. He appealed, alleging that the heroin seized from him by police officers had been improperly received in evidence. The

defendant was denied relief by each level of New York's appellate courts. By the time his conviction reached the United States Supreme Court, Sibron had completed the six month sentence imposed upon him following conviction. The Supreme Court, in determining whether the issues had become moot, observed that in its 1943 decision in *St. Pierre v. United States*, 319 U.S. 41, 63 S.Ct. 910, 87 L.Ed. 1199 (1943), it had recognized an exception to the mootness doctrine in situations where a defendant had completely served his sentence before his appeal was heard by the Supreme Court. The exception underlying the collateral consequences doctrine permitted an "adjudication of the merits of a criminal case where 'under either state or federal law further penalties or disabilities can be imposed ... as a result of the judgment which has ... been satisfied.'" 392 U.S. at 53–54, 88 S.Ct. at 1898, 20 L.Ed.2d at 929. In *Pollard v. United States*, 352 U.S. 354, 77 S.Ct. 481, 1 L.Ed.2d 393 (1957), moreover, the Court had "abandoned all inquiry into the actual existence of specific collateral consequences and in effect presumed that they existed." See: *Sibron v. New York, supra*, 392 U.S. at 55, 88 S.Ct. at 1898, 20 L.Ed.2d at 930. The decision in *Pollard*, the *Sibron* court opined, had merely "acknowledged the obvious fact of life that most criminal convictions do in fact entail adverse collateral legal consequences." *Id.* at 55, 88 S.Ct. at 1899, 20 L.Ed.2d at 930. Thus, in *Sibron*, the Court held that the "mere 'possibility' that this will be the case is enough to preserve a criminal case from ending 'ignominiously in the limbo of mootness.'" *Id.* In fact, the Court stated, "a criminal case is moot only if it is shown that there is *no* possibility that *any* collateral legal consequences will be imposed on the basis of the challenged conviction." *Id.* at 57, 88 S.Ct. at 1900, 20 L.Ed.2d at 931–932 (emphasis added).[4]

---

4. The United States Supreme Court has recently announced that the collateral consequences doctrine espoused in *Sibron* is alive and well. See: *Evitts v. Lucey*, —— U.S. ——, —— n. 4, 105 S.Ct. 830, 833 n. 4, 83 L.Ed.2d 821 (1985). Nonetheless, several Courts of Appeals have attempted to limit the broad scope of this doctrine. See, e.g., *Brough-*

The facts of *Sibron* are similar to those in the instant case. Therefore, the Supreme Court's broad application of the collateral consequences doctrine in that case is especially instructive. There, the State of New York had asserted that the defendant, who already had a record as a multiple offender, would be unlikely to experience any collateral consequences as a result of an additional conviction. The Supreme Court rejected this position, saying:

> ... we see no relevance in the fact that Sibron is a multiple offender.... A judge or jury faced with a question of character, like a sentencing judge, may be inclined to forgive or at least discount a limited number of minor transgressions, particularly if they occurred at some time in the relatively distant past. It is impossible for this Court to say at what point the number of convictions on a man's record renders his reputation irredeemable. And even if we believed that an individual had reached that point, it would be impossible for us to say that he had no interest in beginning the process of redemption with the particular case sought to be adjudicated. We cannot foretell what opportunities might present themselves in the future for the removal of other convictions from an individual's record. The question of the validity of a criminal conviction can arise in many contexts, compare *Burgett v. Texas*, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967), and the sooner the issue is fully litigated the better for all concerned. It is always preferable to litigate a matter when it is directly and principally in dispute, rather than in a proceeding where it is collateral to the central controversy. Moreover, litigation is better conducted when the dispute is fresh and additional facts may, if necessary, be taken without a substantial risk that witnesses will die or memories fade. And it is far better to eliminate the source of a potential

ton v. *State of North Carolina,* 717 F.2d 147, 148–149 n. 3 (4th Cir.1983) (reputational interests are not sufficient to avoid mootness doctrine); *Malloy v. Purvis,* 681 F.2d 736, 738–740 (11th Cir.1982), *cert. denied,* 460 U.S. 1071, 103 S.Ct. 1527, 75 L.Ed.2d 949 (1983) (conviction alone is not sufficient to avoid mootness doctrine).

legal disability than to require the citizen to suffer the possibly unjustified consequences of the disability itself for an indefinite period of time before he can secure adjudication of the State's right to impose it on the basis of some past action. Cf. *Peyton v. Rowe,* 391 U.S. 54, 64, 88 S.Ct. 1549, 1554, 20 L.Ed.2d 426 (1968).

*Id.* at 56–57, 88 S.Ct. at 1899, 20 L.Ed.2d at 930–931 (footnotes omitted). Evident in this discussion was the Court's concern for the social consequences of a wrongful conviction. It was the same concern which later prompted the Pennsylvania Supreme Court's recognition of similar disabilities in *Commonwealth v. Rohde, supra.*

The law established by these decisions compels our conclusion that the P.C.H.A. court in this case erred when it relied upon Markley's prior convictions to negative any social consequences as a result of his convictions. Indeed, *Sibron* suggests that the destruction of a favorable inference of a changed life because of prior misconduct is precisely the type of consequence which prevents a collateral attack from being moot.

There is a distinction, as the *Sibron* court observed, between a general impairment of credibility and a specific statutory authorization to use a conviction to impeach the character of a defendant in a legal proceeding. There, the Court was concerned with a New York statute which provided that a defendant's conviction could be used to impeach his character if he put his character in issue during a future criminal trial. *Id.* at 55–56, 88 S.Ct. at 1899, 20 L.Ed.2d at 930 (citing N.Y.Code Crim.Prac. § 393–c). Another New York law would have required that his conviction be placed before a trial judge for consideration in determining the sentence to be imposed should Sibron again be convicted of a crime. *Id.* at 56, 88 S.Ct. at 1899, 20 L.Ed.2d at 930 (citing N.Y.Code Crim.Proc. § 482). The Court concluded that the disabilities attending these provisions, although speculative, were the collateral consequences referred to in *Pollard, supra. Id.* at 55, 88 S.Ct. at 1898–1899, 20 L.Ed.2d

at 930. The law in Pennsylvania is similar. A witness, whether in a criminal case or a civil case, may be impeached by a showing that he was previously convicted of a crime involving an element of dishonesty. See: *Commonwealth v. Davis*, 491 Pa. 363, 371, 421 A.2d 179, 183 (1980); *Commonwealth v. Roots*, 482 Pa. 33, 37, 393 A.2d 364, 366 (1978); *Commonwealth v. Bighum*, 452 Pa. 554, 566, 307 A.2d 255, 262 (1973); *McIntosh v. Pittsburgh Railways Co.*, 432 Pa. 123, 125, 247 A.2d 467, 468 (1968); *Commonwealth v. Gallagher*, 341 Pa.Super. 152, 157, 491 A.2d 196, 199 (1985); *Commonwealth v. Jennings*, 335 Pa.Super. 404, 407, 484 A.2d 409, 411 (1984). In addition, Pa.R.Crim.P. 1403A(1) provides that a "sentencing judge may, in his discretion, order a pre-sentence investigation report in any case." If a report is prepared, it must "include information regarding the circumstances of the offense and the character of the defendant sufficient to assist the court in determining sentence." *Id.* A(3). In *Commonwealth v. Martin*, 466 Pa. 118, 351 A.2d 650 (1976), the Supreme Court, following the ABA Minimum Standards of Justice, held that such a pre-sentence report should contain, inter alia:

(B) a full description of any prior criminal record of the offender;

*Id.*, 466 Pa. at 134 n. 26, 351 A.2d at 658 n. 26.

Here, the appellant has alleged that his present conviction will affect his criminal record, his employment status, his family relationships, and that he will suffer serious criminal consequences if he is subsequently convicted of another crime. As in *Sibron*, moreover, the authorization for use of appellant's conviction to impeach his character at a subsequent criminal or civil proceeding is a legal disability which is sufficient to preclude his P.C.H.A. petition from being dismissed as moot.

Because appellant's P.C.H.A. petition is not moot, we reverse and remand for an evidentiary hearing on the merits of appellant's P.C.H.A. petition.