683 A.2d 632

COMMONWEALTH of Pennsylvania

v.

Clarence A. AHLBORN, Jr., Appellant.

COMMONWEALTH of Pennsylvania

v.

Clement McGUIRE, Appellant.

Superior Court of Pennsylvania.

Argued Feb. 26, 1996.

Filed July 31, 1996.

John D. Ceraso, New Kensington, for Clarence A. Ahlborn, Jr.

Christian Scherer, Assistant District Attorney, Greensburg, and Hugh J. Burns, Jr., Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before McEWEN, President Judge, CAVANAUGH, J., CIRILLO, P.J.E., DEL SOLE, BECK, TAMILIA, POPOVICH, JOHNSON and HUDOCK, JJ.

TAMILIA, Judge.

The issue presented by these consolidated appeals is one of first impression in this Commonwealth, namely, whether relief is available under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541 *et seq.*, where a petitioner files a PCRA petition while still in custody but is fully discharged prior to final adjudication of the petition. We have certified this important issue for en banc consideration.

Clement McGuire, the appellant at No. 01946 Philadelphia, 1994, was arrested on April 1, 1988, two weeks after he fired a shot which narrowly missed a teenager on a Philadelphia street corner. Minutes prior to the gunshot, the teenager had engaged in a fist fight with a passenger in McGuire's car. On

September 13, 1988, following a nonjury trial, McGuire was convicted of violating the Uniform Firearms Act (VUFA),[1] reckless endangerment[2] and possessing an instrument of crime (PIC).[3] McGuire's post-trial motions were denied and he was ultimately sentenced[4] to two (2) to five (5) years' imprisonment on the VUFA count, six (6) to twelve (12) months consecutive on the reckless endangerment count and six (6) to twelve (12) months concurrent on the PIC count. Thus, McGuire's sentence totalled two and one-half (2½) to six (6) years' imprisonment, with credit for time served. A panel of this Court affirmed McGuire's judgment of sentence on September 15, 1989. *Commonwealth v. McGuire,* 394 Pa.Super. 631, 569 A.2d 1384 (1989) (unpublished Memorandum). On October 6, 1989, McGuire filed a pro se PCRA petition and present counsel was appointed to assist him. Thereafter, while McGuire was still imprisoned, two amended petitions were filed, both of which alleged ineffective assistance of counsel. McGuire was paroled on December 16, 1990 and on August 31, 1993, a PCRA hearing was held. On April 1, 1994, McGuire's parole expired and he was fully discharged. By Order dated May 18, 1994, McGuire's PCRA petition was denied on the merits. This appeal followed.

On May 4, 1990, Clarence A. Ahlborn, appellant at No. 00601 Pittsburgh, 1995, pled guilty to three counts of driving under the influence (DUI)[5] and one count of accident resulting in death or injury.[6] Appellant was sentenced to forty-eight (48) hours to twenty-three (23) months on the first DUI count, a concurrent term of thirty (30) days to twenty-three (23) months on the second DUI count, a consecutive term of four (4) to twenty-three (23) months on the third DUI count

1.  18 Pa.C.S. § 6108.

2.  *Id.,* § 2705.

3.  *Id.,* § 907.

4.  Following sentencing on October 21, 1988. Thereafter, McGuire filed a motion to modify and the sentence was vacated. However, the original sentence was reimposed on January 12, 1989.

5.  75 Pa.C.S. § 3731. Ahlborn also pled guilty to various summary offenses.

6.  75 Pa.C.S. § 3742.

and a concurrent term of thirty (30) days to twenty-three (23) months on the accident resulting in death or injury count. On May 22, 1990, Ahlborn filed a pro se motion to withdraw his guilty plea but for reasons not apparent on the record, the motion was never adjudicated. On November 22, 1993, while still incarcerated, Ahlborn filed his PCRA petition. Counsel was appointed and an amended petition was filed on January 25, 1994 alleging Ahlborn was misled into entering his guilty plea, he believed he was only pleading guilty to two DUI counts, he was never afforded a hearing on the motion to withdraw his guilty plea and he was denied access to court records. A PCRA hearing was scheduled for February 17, 1994. However, on February 14, 1994, Ahlborn completed his sentence and was unconditionally released from prison. Subsequently, the February 17, 1994 hearing was continued and, by Order dated June 8, 1994, the PCRA court dismissed Ahlborn's petition on the basis that, having completed his sentence, he was no longer eligible for PCRA relief. This appeal followed.

By Orders dated October 10 and 11, 1995, respectively, we certified these appeals for en banc review.

Initially, section 9543(a)(1)(i) of the PCRA provides as follows:

### § 9543.  Eligibility for relief

(a) **General rule.**—To be eligible for relief under this subchapter, a person must plead and prove by a preponderance of the evidence all of the following:

(1) that the person has been convicted of a crime under the laws of this Commonwealth and is:

(i) currently serving a sentence of imprisonment, probation or parole for the crime[.]

42 Pa.C.S. § 9543(a)(1)(i).

The Commonwealth argues McGuire and Ahlborn are ineligible for PCRA relief since neither is currently serving a sentence of imprisonment, probation or parole. Thus, the Commonwealth concludes, the instant petitions are moot. To the contrary, Ahlborn claims PCRA eligibility on the basis

that he was currently serving a sentence at the time his petition was filed. These appeals therefore require us to determine whether "currently serving" within section 9543(a)(1)(i) refers to the time the petition is filed or the time the petition is ultimately adjudicated. This question is not answered by Pennsylvania case or statutory law.

In support of its claim that appellants have failed to satisfy the "currently serving" requirement of the PCRA, the Commonwealth relies principally on two cases. In the first, *Commonwealth v. Pierce*, 397 Pa.Super. 126, 579 A.2d 963 (1990), we considered "whether the doctrine of 'collateral consequences', which prevented a collateral attack on a criminal conviction from becoming moot after the sentence had been served, has been superseded by the provisions of the [PCRA]." *Id.* at 128, 579 A.2d at 964. Pierce completed the maximum term of a five (5) to fifteen (15) year sentence for second degree murder, then filed a PCRA petition alleging eligibility because of collateral criminal consequences flowing from his conviction.[7]

The *Pierce* Court began by discussing the "currently serving" provision of section 9543(a)(1)(i), which the trial court determined required dismissal of appellant's petition. Finding the legislative history of the PCRA scant, the Court turned to its predecessor statute, the Post Conviction Hearing Act (PCHA), 42 Pa.C.S. § 9541 *et seq.* (1982), amended by 42 Pa.C.S. § 9541 *et seq.* (1988), which applied when the petitioner "is incarcerated". The Court then noted that "[b]ecause of the general nature of this requirement, the Supreme Court created an exception to the mootness doctrine, which was known as the 'collateral consequences' doctrine." *Id.* at 129, 579 A.2d at 964–965. This doctrine, as ultimately crafted by our Supreme Court, provided that a collateral attack upon a conviction for which a sentence has been fully served is not moot where the petitioner can demonstrate that the conviction will affect a subsequent criminal prosecution, *Commonwealth*

---

7. *Commonwealth v. Pierce*, 397 Pa.Super. 126, 579 A.2d 963 (1990), does not disclose the nature of the "collateral criminal consequences" alleged.

*v. Sheehan,* 446 Pa. 35, 285 A.2d 465 (1971), or will have either actual or potential civil consequences, *Commonwealth v. Doria,* 468 Pa. 534, 364 A.2d 322 (1976). However, according to the *Pierce* Court, since the PCRA limited eligibility to those "currently serving", it necessarily superseded the doctrine of collateral consequences which was derivative of the language of the PCHA, which had been modified as indicated above. The Court also noted, "[t]he provision under the PCRA that a petitioner be 'currently serving' or waiting to serve a sentence for the prior conviction in order to be eligible for relief is consistent with the federal habeas corpus provision requiring that a petitioner be 'in custody' in order to obtain relief." *Pierce, supra* at 131, 579 A.2d at 965–966. The Court concluded:

> The Post Conviction Relief Act, when read as a whole and in conjunction with its predecessor, the Post Conviction Hearing Act and the law pertaining to federal habeas corpus relief, leads us to conclude that the language of the Post Conviction Relief Act pertaining to eligibility for relief was intended to limit relief to those petitioners whose sentences have not expired and to preclude relief for those whose sentences have expired, regardless of collateral consequences.

*Id.* at 131, 579 A.2d at 966.

The second case relied on by the Commonwealth is *Commonwealth v. Hayes,* 408 Pa.Super. 68, 596 A.2d 195 (1991), *alloc. denied,* 529 Pa. 646, 602 A.2d 856 (1992), in which our Court en banc considered "whether the interpretation of the [PCRA] announced by this court in [*Pierce* ] should be overruled." *Id.* As in *Pierce,* the PCRA petition in *Hayes* was both filed and adjudicated after petitioner's sentence had been fully served. The *Hayes* Court, tracking the *Pierce* analysis, engaged in an extensive review of federal habeas corpus law and also found relevant the legislature's alteration of the PCHA "is incarcerated" requirement to the "currently serving" mandate of the PCRA.

Since the legislature rewrote the eligibility requirements, our examination of the specific language, in particular the

inclusion of the adverb "currently," leads to the conclusion that the legislature intended to limit post-conviction relief under the PCRA to individuals who at the time of filing for PCRA relief are serving a sentence of imprisonment, probation or parole for a conviction, regardless of the collateral criminal consequences from the conviction. . . .

We conclude that the language changes in the PCRA were deliberately made to confront and alter the collateral criminal consequences rule. Therefore we decline to interject the collateral criminal consequences rule into the PCRA. To do so ignores the legislature's intent and the plain meaning of the word changes made in the PCRA.

In summary, we find that the legislature has clearly modified the eligibility requirements under the PCRA from those that previously existed under the PCHA. . . . [W]e find the enactment of the PCRA precludes post-conviction relief under the PCRA where the petitioner's sentence of imprisonment, probation or parole has expired prior to filing for relief. . . .

*Id.* at 75–77, 596 A.2d at 199–200 (footnote omitted).[8] As these statements indicate, *Pierce* and *Hayes* found that the "currently serving" requirement of the PCRA was intended to abrogate the doctrine of collateral consequences.

From *Pierce* and *Hayes*, the Commonwealth concludes a case is moot under the PCRA when the defendant has finished serving his sentence. Although we address the mootness argument infra, we reject the Commonwealth's contention that *Pierce* and *Hayes* assist our resolution of whether "currently serving" applies at the date of hearing or the date of adjudication. Both *Pierce* and *Hayes* involved PCRA petitions which were filed *after* the appellants had completed their sentences; the present cases were filed before petitioners were released from custody and pose the question of their eligibility for PCRA relief and whether *Pierce* and *Hayes* are distinguish-

8. Our research indicates that Pennsylvania is the only jurisdiction, state or federal, which has expressly abrogated the doctrine of collateral consequences.

able.[9]   Further, our research has disclosed no other case discussing whether the "currently serving" requirement of the PCRA applies at the date of filing or the date of adjudication.

Having found the question at issue has not been squarely addressed in Pennsylvania, we look to analogous case law from other jurisdictions.   While *Pierce* and *Hayes* are of little assistance because the PCRA petitions in both cases were filed after release, their references to federal habeas corpus law provide us with a starting point.   For instance, the *Pierce* court found the "currently serving" requirement of our PCRA "is consistent with the federal habeas corpus provision requiring that a petitioner be 'in custody' in order to obtain relief." *Id.* at 131, 579 A.2d at 965.   Since "currently serving" and "in custody" are analogous, we turn to factually similar habeas corpus cases defining "in custody."

Foremost among these cases is *Carafas v. LaVallee*, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968).   In *Carafas*,

9.  In attempting to diminish this important factual difference, the Commonwealth argues, without citation, that "the mootness doctrine simply does not distinguish between a petitioner who completed his sentence before filing and one who completed his sentence before the hearing was completed."   Thus, according to the Commonwealth, PCRA eligibility is determined at the time of the hearing and the filing date is irrelevant.   If this is true, it is interesting to note that *Commonwealth v. Hayes*, 408 Pa.Super. 68, 596 A.2d 195 (1991), expressly and repeatedly focused on the date of filing.   For instance, the Court affirmed the trial court's dismissal of appellant's petition "because appellant had fully served his sentence of probation prior to *filing* for PCRA relief." *Hayes, supra* at 69, 596 A.2d at 196 (emphasis added).   Further, the Court states "the legislature intended to limit post-conviction relief under the PCRA to individuals who *at the time of filing for PCRA relief* are serving a sentence." *Id.* at 75, 596 A.2d at 199 (emphasis added). The Court also found "the enactment of the PCRA precludes post-conviction relief . . . where the petitioner's sentence . . . expired prior to *filing* for relief. . . ." *Id.* at 77, 596 A.2d at 200 (emphasis added). Finally, the *Hayes* court concluded, "we affirm the PCRA court's finding that appellant is not eligible for PCRA relief because appellant had already fully served his sentence of probation at the time he *filed* his PCRA petition." *Id.* (emphasis added).   Thus, despite the Commonwealth's reliance on *Hayes*, the express language of the case appears to indicate that McGuire and Ahlborn are eligible for PCRA relief, since they filed their petitions prior to expiration of their sentences.   However, since *Hayes* did not involve a petition filed prior to release, any reliance on its use of filing date, as opposed to hearing date, would be tenuous.

like the cases sub judice, "petitioner's application was filed . . . when he was in state custody, [but] the petitioner was unconditionally released . . . before his case could be heard[.]" *Id.* at 238, 88 S.Ct. at 1559, 20 L.Ed.2d at 558. "The issue presented then, [was] whether the expiration of petitioner's sentence, before his application was finally adjudicated and while it was awaiting appellate review, terminates federal jurisdiction with respect to the application." *Id.* at 237, 88 S.Ct. at 1559, 20 L.Ed.2d at 558. The Supreme Court resolved this issue as follows:

> We conclude that under the statutory scheme, once the federal jurisdiction has attached in the District Court, it is not defeated by the release of the petitioner prior to completion of proceedings on such application.
>
> The federal habeas corpus statute requires that the applicant must be "in custody" when the application for habeas corpus is *filed.*

*Id.* at 238, 88 S.Ct. at 1559–60, 20 L.Ed.2d at 558–559 (emphasis added).[10]

Consequently, unlike *Pierce* and *Hayes, Carafas* resolved the specific question at issue herein and found that "in custody", a statutory requirement which our Court has found "consistent" with "currently serving", *Pierce, supra* at 128–31, 579 A.2d at 964–965, applies to the date of filing rather than the date of adjudication.

The continuing validity of *Carafas* is beyond question. In fact, beginning a mere 21 days after the decision was rendered, an unbroken line of Supreme Court cases has relied on

10. In so holding, the Court also overruled *Parker v. Ellis*, 362 U.S. 574, 80 S.Ct. 909, 4 L.Ed.2d 963 (1960), which held that upon a petitioner's unconditional release his habeas corpus application becomes moot, regardless of when the application was filed. *Carafas,* 391 U.S. at 240, 88 S.Ct. at 1560, 20 L.Ed.2d at 560. In their *Carafas* Concurring Opinion, Justices Harlan and Stewart also stated, "although we joined the Per Curiam decision in [*Parker* ], we are now persuaded that what the Court there decided was wrong insofar as it held that even though a man be in custody when he initiates a habeas corpus proceeding, the statutory power of the federal courts to proceed to a final adjudication of his claims depends on his remaining in custody." *Id.* at 242–243, 88 S.Ct. at 1562, 20 L.Ed.2d at 561.

*Carafas* for the proposition that an unconditional release of the petitioner does not divest the court of jurisdiction over a habeas corpus petition, so long as the petition was filed while the petitioner was still "in custody." *See e.g., Maleng v. Cook,* 490 U.S. 488, 490, 109 S.Ct. 1923, 1925, 104 L.Ed.2d 540, 544 (1989) (*citing Carafas,* "we have interpreted the statutory language as requiring that the habeas petitioner be 'in custody' under the conviction or sentence under attack at the time his petition is filed."); *Evitts v. Lucey,* 469 U.S. 387, 391 n. 4, 105 S.Ct. 830, 833 n. 4, 83 L.Ed.2d 821, 826 n. 4 (1985); *Lehman v. Lycoming County Children's Services Agency,* 458 U.S. 502, 509, 102 S.Ct. 3231, 3236, 73 L.Ed.2d 928, 935 (1982) ("[In *Carafas* ], the Court allowed the writ in a challenge to a state-court judgment even though the prisoner, incarcerated at the time the writ was filed, had finished serving his sentence during the proceedings. The custody requirement had, of course, been met at the time the writ was filed . . . ."); *Engle v. Isaac,* 456 U.S. 107, 113 n. 7, 102 S.Ct. 1558, 1564 n. 7, 71 L.Ed.2d 783, 791 n. 7 (1982); *Jones v. Helms,* 452 U.S. 412, 415 n. 6, 101 S.Ct. 2434, 2438 n. 6, 69 L.Ed.2d 118, 123 n. 6 (1981); *Sibron v. New York,* 392 U.S. 40, 51, 88 S.Ct. 1889, 1896, 20 L.Ed.2d 917, 928 (1968) ("[In *Carafas* ] we held unanimously that the writ of habeas corpus was available to test the constitutionality of a state conviction where the petitioner had been in custody when he applied for the writ, but had been released before this Court could adjudicate his claims.")

■  We find that this authority suggests the proper construction of section 9543(a)(1)(i) of our PCRA to be that "currently serving" under that section is determined at the time of filing, regardless of whether petitioner is thereafter unconditionally released from custody.

Notwithstanding, our conclusion that the "currently serving" requirement necessary for jurisdiction is to be determined at the time the petition is filed does not preclude the possibility that the petition may thereafter become moot. *In re Gross,* 476 Pa. 203, 209, 382 A.2d 116, 119 (1978), *citing* G. Gunther, Constitutional Law, 1578 (9th ed. 1975) ("The moot-

ness doctrine requires that 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed'."). Accordingly, we return to the Commonwealth's claim that the instant PCRA petitions are moot. The Commonwealth argues at great length that the legislative abrogation of the collateral consequences doctrine recognized by the *Pierce* and *Hayes* courts renders a PCRA petition moot once a petitioner is unconditionally released, regardless of whether the petitioner is in custody at the time the petition is filed. In regard thereto, the Commonwealth asserts

> [Appellant's] PCRA claims are moot. Since the collateral consequences doctrine has been eliminated in the PCRA statute, the sole PCRA relief that may be granted is release from custody. Where the petitioner is no longer in custody, there is nothing for the PCRA court to grant. It does not matter whether custody ended before or after the PCRA petition was filed. The only relief the PCRA court can grant is relief from non-collateral consequences of the conviction: *i.e.*, custody. When the petitioner completes his sentence, whether before or after filing his petition, there are no more non-collateral consequences for the PCRA court to address.

Commonwealth's McGuire brief at 7.

■ For reasons that follow, we agree with the Commonwealth's ultimate conclusion that the PCRA petitions filed by McGuire and Ahlborn are moot. In clarification of our analysis we initially note that the Commonwealth's argument ignores the distinction between jurisdiction and mootness. Specifically, the issue upon which we granted en banc review, and which we decided above, required us to determine the point in time (filing or hearing date) at which a petitioner satisfies the "currently serving" requirement of the PCRA. This requirement must be met in order to confer upon a court *jurisdiction* to hear a PCRA petition. The fact that the case thereafter becomes moot, although relevant to the ultimate adjudication, is irrelevant in determining whether and at what point jurisdiction attaches under the PCRA. In short, jurisdiction must be determined independent of mootness. The Common-

wealth's claim that "[i]t does not matter whether custody ended before or after the PCRA petition was filed" is incorrect because if custody ends after filing, the court has jurisdiction to determine mootness, whereas the court lacks jurisdiction, as a threshold matter, over a petition filed after unconditional release from custody. Further discussion of the United States Supreme Court cases cited above demonstrates the flaw in the Commonwealth's argument and highlights the important difference between jurisdiction and mootness.

The Commonwealth's mootness argument is identical to the holding of *Parker, supra*, in which the Supreme Court found that a petitioner's unconditional release from custody renders a habeas petition moot, even where the petitioner filed while still in custody. *Id.* at 574, 80 S.Ct. at 910, 4 L.Ed.2d at 965 (1960). Relying on *Parker*, the state of New York also advanced this argument before the *Carafas* Court. In rejecting New York's argument and overruling *Parker*, the *Carafas* court held as follows:

> The substantial issue, however, which is posed by *Parker v. Ellis*, is not mootness in the technical or constitutional sense, but whether the statute defining the habeas corpus jurisdiction of the federal judiciary in respect of persons in state custody is available here. In *Parker v. Ellis*, as in the present case, petitioner's application was filed in the federal District Court when he was in state custody, and in both the petitioner was unconditionally released from state custody before his case could be heard in this court.... We conclude that under the statutory scheme, once the federal jurisdiction has attached in this District Court, it is not defeated by the release of the petitioner prior to completion of proceedings of such application.... [Hence], *Parker v. Ellis* must be overruled.

*Id.* at 238–240, 88 S.Ct. at 1559–61, 20 L.Ed.2d at 558–560.

Pursuant to *Carafas*, the question to be determined is not mootness, but rather "whether the statute defining ... jurisdiction ... is available here[;]" and "once the ... jurisdiction has attached ... it is not defeated by the release of the petitioner prior to completion of proceedings[.]" *Id.*

The *Carafas* holding that jurisdiction exists is not undermined by the fact the Court also relied upon the doctrine of collateral consequences to determine the petition was not moot. As noted, this finding was tangential to the court's holding, since "[t]he substantial issue ... is not mootness[.]" *Id.* In fact, the Supreme Court's recent clarification of *Carafas* in *Maleng, supra,* emphasizes this point:

> In *Carafas*, the petitioner filed his habeas application while he was actually incarcerated under the sentence he sought to attack, but his sentence expired and he was unconditionally discharged from custody while his appeal from the denial of habeas relief below was pending before this Court. The state argued that the unconditional discharge rendered the case moot. We rejected this argument, holding that the "collateral consequences" of the petitioner's conviction—his ability to vote, engage in certain businesses, hold public office, or serve as a juror—prevented the case from being moot. We went on to say, however, that the unconditional release raised a "substantial issue" as to the statutory "in custody" requirement. *While we ultimately found that requirement satisfied as well, we rested that holding not on the collateral consequences of the conviction, but on the fact that the petitioner had been in physical custody under the challenged conviction at the time the petition was filed.*

*Id.* at 492, 109 S.Ct. at 1926, 104 L.Ed.2d at 545 (emphasis added).

Consequently, according to *Maleng,* the *Carafas* holding that petitioner had satisfied the "in custody" requirement of the statute was premised not on the absence of mootness "but on the fact that the petitioner had been in physical custody under the challenged conviction at the time the petition was filed." *Id.* It follows that *Carafas* and *Maleng* stand for the principle that the incarceration requirement of a jurisdictional statute must be determined independent of mootness. Similarly, our conclusion that the "currently serving" requirement of the PCRA is determined at the time of filing means only that the instant PCRA courts had jurisdiction over appellants' petitions. A subsequent determination of mootness does not

divest the courts of jurisdiction, although the case may nevertheless be dismissed.

Having clarified that jurisdiction and mootness are separate inquiries, and in determining jurisdiction over the petitions before us existed in the PCRA courts, we can proceed to determine if those petitions now are rendered moot.

It is axiomatic that an actual case or controversy must exist at all stages of appellate review. *DeFunis v. Odegaard,* 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974). Since the existence of an actual controversy is essential to appellate jurisdiction, if, pending an appeal, an event occurs which renders it impossible for the appellate court to grant any relief, the appeal will be dismissed. *Commonwealth ex rel. Watson v. Montone,* 227 Pa.Super. 541, 323 A.2d 763 (1974).

> The cases presenting mootness problems involve litigants who clearly had standing to sue at the outset of the litigation. The problems arise from events occurring after the lawsuit has gotten under way—changes in the facts or in the law—which allegedly deprived the litigant of the necessary stake in the outcome. The mootness doctrine requires that "an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed."

*In re Gross, supra* at 209, 382 A.2d at 119, *quoting* G. Gunther, Constitutional Law, 1578 (9th ed. 1975). The appellate courts of this Commonwealth will not decide moot questions. *Id., see also Ridley Park Shopping Center, Inc. v. Sun Ray Drug Co.,* 407 Pa. 230, 180 A.2d 1 (1962); *Graziano Construction Co., Inc. v. Lee,* 298 Pa.Super. 311, 444 A.2d 1190 (1982).

Initially, we agree with the Commonwealth that the legislative abrogation of the collateral consequences doctrine [11]

11. Analytically, jurisdictions recognizing the doctrine of collateral consequences apply it as one of two recognized exceptions to the mootness doctrine. *See Carafas v. LaVallee,* 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968); *Sibron v. New York,* 392 U.S. 40, 51, 88 S.Ct. 1889, 1896, 20 L.Ed.2d 917, 928 (1968). The second exception, applying to those cases "capable of repetition, yet evading review" was recognized

recognized in *Pierce* and *Hayes* has left us without a basis upon which to grant appellants relief. Since the doctrine of collateral consequences has been abrogated, we may consider no harm to appellants other than incarceration because any consequences of the challenged conviction other than incarceration are, by definition, "collateral." Upon unconditional release from custody, all cognizable harm necessarily ends and a pending petition, regardless of when it was filed, becomes moot. We are simply unable to conceive of a basis upon which a petitioner who has been unconditionally released from custody would seek to challenge a conviction, other than to prevent the occurrence of possible future adverse collateral consequences. Since we are not permitted to consider these consequences, no case or controversy exists and the case is necessarily moot. *Lane v. Williams*, 455 U.S. 624, 632, 102 S.Ct. at 1322, 1327, 71 L.Ed.2d 508, 515 ("A criminal case is moot . . .

in *Southern Pacific Terminal Co. v. Interstate Commerce Commission*, 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911). In rejecting the ICC's contention that the expiration of its Order rendered the controversy moot, the Supreme Court found the short duration of Orders such as the one before it would result normally in their expiration before review could effectively be accomplished. Under such circumstances, where the questions involved in the controversy are important and of a continuing nature, the mootness doctrine will not be applied. *Id.* at 515, 31 S.Ct. at 283; Pennsylvania has also recognized this exception to mootness. *See e.g., In re Gross*, 476 Pa. 203, 209, 382 A.2d 116, 119 (1978); *Meyer v. Strouse*, 422 Pa. 136, 221 A.2d 191 (1966); *Wiest v. Mount Lebanon School District*, 457 Pa. 166, 320 A.2d 362, *cert. denied*, 419 U.S. 967, 95 S.Ct. 231, 42 L.Ed.2d 183 (1974); *Devlin v. Osser*, 434 Pa. 408, 254 A.2d 303 (1969); *Graziano Construction Co., Inc. v. Lee*, 298 Pa.Super. 311, 444 A.2d 1190 (1982). The *Southern Pacific* exception to the mootness doctrine has been applied where the likelihood of the recurrence of a controversy of short duration is coupled with the presence of a paramount interest in assuring adequate appellate review of a dispute having public significance. *See e.g., Weinstein v. Bradford*, 423 U.S. 147, 148, 96 S.Ct. 347, 348, 46 L.Ed.2d 350, 352 (1975); *Maryland Casualty Company v. Pacific Coal and Oil Company*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826, 828 (1940). No party to the instant cases invokes, or even discusses, this exception. Further, the exception clearly is not relevant, since neither case involves the short duration, likelihood of recurrence or paramount public interest necessary to the exception's applicability. Hence, neither of the generally-recognized exceptions to mootness will prevent the instant petitions from being deemed moot.

if it is shown that there is no possibility [of] any collateral legal consequences[.]").[12]

Our conclusion that the petitions here appealed are moot also appears to be supported by *Commonwealth v. Smith*, 336 Pa.Super. 636, 486 A.2d 445 (1984), the sole Pennsylvania case we have found involving a hearing after the petitioner's release from custody where the petition was filed prior to release. The pro se habeas corpus petition in *Smith* was filed on February 22, 1983, while petitioner was incarcerated. The petition, alleging petitioner's lack of access to an adequate law library violated his due process rights under the Fourteenth

12. In his Dissenting Opinion, President Judge Emeritus Cirillo argues at length that the enhancement provisions of our law impose "heightened consequences on a subsequent conviction" and, on this basis, we should adjudicate the instant PCRA petitions. However, as the dissent certainly realizes, these "heightened consequences" are precisely the collateral criminal consequences which *Pierce* and *Hayes* prevent us from considering. Thus, in reality, the dissent does not dispute our interpretation of current Pennsylvania law, which expressly forbids consideration of the factors upon which the dissent is premised. Rather, the true thrust of the dissent is that *Pierce* and *Hayes* should be overruled and the doctrine of collateral consequences reinstated. While Judge Cirillo's position is consistent with his joinder of Judge Cavanaugh's dissents in both *Hayes* and this case, the propriety of the doctrine of collateral criminal consequences is not now before us and, rather than reopening this settled issue, we rely upon the rationale for abrogating the doctrine set forth by the en banc majority in *Hayes*.

We also acknowledge the concern expressed by Judge Del Sole, in the dissenting portion of his Concurring and Dissenting Opinion, that our holding "would conclude that a properly filed petition which is delayed by the court for years becomes moot when a petitioner is released from custody." Judge Del Sole would have us adjudicate such a petition, as well as those presently before us, on the basis that "there are collateral consequences to a conviction which continue despite that fact that a defendant has completed serving the sentence imposed. . . . The potential for collateral consequences in [the instant] cases is real." Thus, like Judges Cirillo and Cavanaugh, Judge Del Sole urges that we revive the doctrine of collateral consequences laid to rest by our Court en banc in *Hayes*. As discussed above, we defer such reconsideration of *Hayes* to a future case presenting appropriate circumstances. Similarly, as to Judge Del Sole's concern that judicial delay may unnecessarily cause PCRA petitions to be moot, we mention without deciding that the *Southern Pacific* exception to the mootness doctrine (discussed in note 11, *supra* ) might prevent an unduly delayed PCRA petition from being deemed moot, since such a case may be "capable of repetition, yet evading review." However, while we are troubled at such an extended and unexplained delay by the trial court in the *McGuire* case, today we decide only that we are simply unable to consider the exception to mootness advanced by Judges Cavanaugh, Cirillo and Del Sole.

Amendment, was denied on February 25, 1983, and petitioner filed his appeal 30 days later. However, on January 13, 1984, before the appeal was adjudicated, petitioner was released unconditionally from custody. In dismissing the petition as moot, a panel of our Court held as follows:

Appellant's appeal is rendered moot by the intervening change in the facts of his case, i.e., his release from the custody and control of the Lebanon County Prison in January of 1984. Thus, appellant no longer suffers from any alleged unconstitutional inadequacy of the Lebanon County Prison law library. Appellant no longer has any stake in the outcome of his case.

Furthermore, no exception to the mootness doctrine applies herein.... [Thus], [s]ince appellant seeks relief through a habeas corpus proceeding on the basis of an inadequate law library for a prisoner of the Lebanon County Prison, and since appellant no longer suffers from this alleged unconstitutional condition, we find that the matter before this Court is moot, and we dismiss the appeal....

*Id.* at 641–642, 486 A.2d at 448–449.

Although appellant's petition was filed prior to his release, it was dismissed by the *Smith* Court because petitioner's subsequent release rendered the case moot. While *Smith* did not involve the "currently serving" requirement of the PCRA, and therefore did not assist our previous discussion of jurisdiction, we agree with the holding that a petitioner's appeal "is rendered moot by the intervening change in the facts of his case, i.e. his release from ... custody", *id.*, regardless of when the petition was filed.

Finally, our conclusion that the petitions herein are moot also appears to be supported by section 9546 of the PCRA, which provides as follows:

### § 9546. Relief and order

(a) **General rule.**—If the court finds in favor of the petitioner, it shall order appropriate relief and issue supplementary orders as to rearraignment, retrial, custody, bail,

discharge, correction of sentence or other matters that are necessary and proper.

All of the named remedies in this section—rearraignment, retrial, custody, bail, discharge and correction of sentence— suggest that the petitioner has not fully served the sentence imposed, since none would be appropriate where the petitioner has been fully discharged. Further, as to "appropriate relief" and "other matters that are necessary and proper," we are aware of no construction of these phrases indicating that relief is available after a sentence has been fully served.

Based on the foregoing, we hold that the "currently serving" requirement of 9543(a)(1)(i) is determined at the time a PCRA petition is filed. Petitions not filed prior to the petitioner's unconditional release from custody are not cognizable under the PCRA and our courts are without jurisdiction to hear such petitions. Even where a petition is filed prior to the petitioner's release from custody, it is nevertheless rendered moot by petitioner's subsequent unconditional release.[13]

**13.** It is also suggested that deeming petitions which were filed while the petitioner was in custody moot because he is unconditionally released prior to hearing might encourage judges or prosecutors to delay adjudication until after the petitioner's sentence has expired. While we will not impute such base motives to the trial judiciary, this does not change the fact that we are unable to recognize claims of PCRA petitioners after they are unconditionally released. As noted, *Pierce* and *Hayes* found that our legislature, in abrogating the doctrine of collateral consequences, left petitioners without a basis upon which to attack convictions after they are released. Thus, an unconditional release necessarily deprives a petitioner of a stake in the outcome of a case and the courts have no choice but to dismiss the case as moot. *In re Gross, supra, citing* G. Gunther, Constitutional Law, 1578 (9th ed. 1975) ("The cases presenting mootness problems ... arise from events occurring after the lawsuit has gotten underway—changes in the facts or in the law—which allegedly deprived the litigant of the necessary stake in the outcome."). The unconditional release of McGuire and Ahlborn and the abrogation of the collateral consequences doctrine are such "changes in the facts [and] in the law" that render the instant petitions moot and we are unwilling to ignore the clear mandate of these principles based on nothing more than the possibility that the trial judges and prosecutors of this Commonwealth might engage in misconduct. Similarly, the fact that a petitioner's sentence is too short for final adjudication of his PCRA claims does not somehow revive a stake in the outcome of his case where that stake has been expressly abrogated by our legislature and the relief requested is no longer available.

143

The petitions herein fall within this latter category and therefore are moot. Thus, we affirm the May 18, 1994 Order dismissing McGuire's petition [14] and the June 8, 1994 Order dismissing Ahlborn's petition.

Orders affirmed.

DEL SOLE, J., files a Concurring and Dissenting Opinion.

CAVANAUGH, J., files a Dissenting Opinion in which CIRILLO, P.J.E. and JOHNSON, J., joined.

CIRILLO, President Judge Emeritus, files a Dissenting Opinion.

DEL SOLE, Judge, concurring and dissenting.

I join the Majority in its conclusion that to invoke jurisdiction under the Post Conviction Relief Act (PCRA), 42 Pa. C.S.A. §§ 9541 *et seq.*, a defendant must be "currently serving a sentence of imprisonment, probation or parole" at the time a petition for relief is filed. I specifically do not join that portion of the Majority's discussion which would conclude that a properly filed petition which is delayed by the court for years becomes moot when a petitioner is released from custody.

I agree with the dissenting views of my colleagues Judge Cirillo and Judge Cavanaugh, to the extent that they conclude there are collateral consequences to a conviction which continue despite that fact that a defendant has completed serving the sentence imposed. In *Commonwealth v. Pierce*, 397 Pa.Super. 126, 579 A.2d 963 (1990) and *Commonwealth v. Hayes*, 408 Pa.Super. 68, 596 A.2d 195 (1991), we concluded that a PCRA petition filed after completion of the sentence is correctly dismissed as moot. However, we did not reach the precise issue now before us.

**14.** Although McGuire's petition was dismissed on the merits, and not on the basis of mootness, we may affirm a decision of the trial court when it is correct on any basis, regardless of the basis upon which the trial court relied. *Commonwealth v. Allem*, 367 Pa.Super. 173, 178, 532 A.2d 845, 848 (1987).

It has been held, in a civil context, that where one of the parties to a controversy continues to suffer some detriment from a lower court decision, an appeal will usually be heard. *Janet D. v. Carros,* 240 Pa.Super. 291, 362 A.2d 1060 (1976). In my view this same analysis should apply and prevent the instant petitions from being considered moot. The potential for collateral consequences in these cases is real. Thus, a petition which is jurisdictionally sound, because it was filed during a period when the petitioner was "currently serving" a sentence, should not be rendered moot just because the petitioner later completed the service of that sentence before the petition was adjudicated. The delay between the filing of the petition and a later adjudication is, in most instances, not caused by the petitioner but rather, by the court. Because of this fact, the existence of collateral consequences, and the potential for abuse I believe it improper to consider these matters moot.

In instances where a petition is filed while a petitioner is "serving a sentence," jurisdiction is conferred on the court and it should decide the merits of the petition irrespective of whether the petitioner has completed serving the sentence.

CAVANAUGH, Judge, dissenting.

In *Commonwealth v. Hayes,* I dissented and took the position that the 1988 amendment of the Post Conviction Hearing Act did not intend to eradicate the employment of the collateral consequences doctrine as a basis for invoking the benefits of the PCRA. In the interest of consistency and at the risk of engaging in tautology, I dissent and would reverse. *Commonwealth v. Hayes,* 408 Pa.Super. 68, at 77, 596 A.2d 195, at 200 (1991).

CIRILLO, President Judge Emeritus, and JOHNSON, J., join this dissent.

CIRILLO, President Judge Emeritus, dissenting.

I join the dissenting opinion of my esteemed colleague, Judge Cavanaugh, which is based upon the validity of the

collateral criminal consequences doctrine as espoused in his well-reasoned dissent in *Commonwealth v. Hayes*, 408 Pa.Super. 68, 596 A.2d 195 (1991). I write separately, however, to state an additional reason for the impropriety of the majority's decision today.

In *Commonwealth v. Dickerson*, 533 Pa. 294, 621 A.2d 990 (1993), our supreme court reiterated a long-standing theory behind habitual criminal legislation. Specifically, the *Dickerson* court stated

> [t]he point of sentence enhancement is to punish more severely offenders who have persevered in criminal activity despite the theoretically beneficial effects of penal discipline. *Commonwealth v. Wolfe*, 349 Pa.Super. 415, 419, 503 A.2d 435, 437 (1986), *allocatur granted*, 514 Pa. 617, 521 A.2d 932 (1986), *appeal dismissed*, 517 Pa. 406, 537 A.2d 1370 (1988).

*Id.* at 299–300, 621 A.2d at 992. Pennsylvania's criminal and sentencing statutes, which have detailed guidelines for sentencing a defendant, include a section relating to the computation of a defendant's prior record score before determining the appropriate sentence for a defendant on a subsequent conviction. *See* 42 Pa.C.S.A. § 9701, *et seq;* 204 Pa.Code § 303.4–7. A defendant's prior record will result in an enhanced sentence on a subsequent crime when a prior offense has resulted in a conviction before the later offense is committed. *See Dickerson*, 533 Pa. at 300, 621 A.2d at 993.

Our own court, recognizing the necessity of applying these recidivist provisions strictly and consistently, has expressed that

> [i]t was not intended that the heavier penalty prescribed for the commission of a second offense should descend upon anyone except the incorrigible one, who after being reproved, "still hardenth his neck." If the heavier penalty prescribed for the second violation . . . is visited upon the one who has not had the benefit of the reproof of a first conviction, then the purpose of the statute is lost.

*Commonwealth v. Kane*, 430 Pa.Super. 203, 206, 633 A.2d 1210, 1211 (1993) (*en banc*) (quoting *Commonwealth v. Sut-*

*ton,* 125 Pa.Super. 407, 413, 189 A. 556, 558 (1937). In addition, this court has repeatedly expressed its views on the validity, application and effect of the enhancing statutes. *See Kane, supra* (enhancement provision of Crimes Code not applied to a defendant who was sentenced and convicted of second drug offense prior to his sentencing or conviction of first drug offense); *Commonwealth v. Beatty,* 411 Pa.Super. 450, 601 A.2d 1253 (1992) (*en banc* ) (when determining penalty enhancement under Motor Vehicle Code section, only those convictions prior to the offense date and within look-back period shall be utilized to determine the applicable penalty enhancement; defendant who had only pled guilty on first offenses, where pleas had not been entered until after his conviction on a second crime, was not subject to enhancement provision); *Commonwealth v. Tobin,* 411 Pa.Super. 460, 601 A.2d 1258 (1992) (*en banc* ) (defendant who pled guilty to two driving under the influence offenses was not subject to enhanced sentence unless he had previous conviction at the time of his second offense); *Commonwealth v. Eck,* 411 Pa.Super. 465, 601 A.2d 1261 (1992) (*en banc* ) (determines proper procedure for employing recidivist statute in light of a conviction of a prior offense under the Motor Vehicle Code); *Commonwealth v. T. Williams,* 431 Pa.Super. 167, 636 A.2d 183 (1993) (*en banc* ) (court must remain consistent in applying recidivist provisions to ensure continuity, efficiency, and stability in our judicial decision-making) (Cirillo, J., concurring and dissenting).

In this case, both McGuire and Ahlborn were convicted of crimes. Unlike the majority, I cannot regard their PCRA petitions as "moot;" the potential for harm under the enhancing statutes and the sentencing guidelines still exists. To cause these defendants to potentially suffer the heightened consequences on a subsequent conviction, based upon the present convictions which may have been reversed due to meritorious claims presented in their unreviewed PCRA petitions, is against basic principles of justice and the rights conferred under our state and federal constitutions.

Accordingly, I would reverse.