J-S05014-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| BENJAMIN JOSEPH KERRICK, | |
| Appellant | No. 1452 MDA 2016 |

Appeal from the PCRA Order Entered August 17, 2016
In the Court of Common Pleas of Tioga County
Criminal Division at No(s): CP-59-CR-0000020-2013

BEFORE: BENDER, P.J.E., PANELLA, J., and PLATT, J.[*]

MEMORANDUM BY BENDER, P.J.E.: **FILED FEBRUARY 21, 2017**

Appellant, Benjamin Joseph Kerrick, appeals from the post-conviction court's August 17, 2016 order denying his petition filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. Appellant raises three claims of trial counsel's ineffectiveness. After careful review, we affirm.

In February of 2014, a jury convicted Appellant of various sexual offenses stemming from his abuse of his daughter. This Court previously summarized the facts underlying Appellant's convictions, as follows:

> The record reveals the victim was eleven years old when she first met her father, [Appellant]. Not long after they were reunited, [Appellant] began sexually assaulting the victim, including digital penetration of and sexual intercourse with her.

---

[*] Retired Senior Judge assigned to the Superior Court.

These assaults took place in Elkland and Jim Thorpe, Pennsylvania. Elkland is in Tioga County while Jim Thorpe is in Carbon County. As noted, one instance of incest and one instance of aggravated indecent assault took place in Carbon County. This pattern of sexual abuse continued until the victim was 14 years old. Some years later, the victim reported the abuse. The victim was 19 years old at the time of trial.

*Commonwealth v. Kerrick*, No. 1125 MDA 2014, unpublished memorandum at 2 (Pa. Super. filed June 16, 2015).

Appellant was charged with numerous offenses and, at the conclusion of a jury trial, he was convicted of indecent assault (victim less than 13 years old), three counts of aggravated indecent assault (victim less than 16 years old), and three counts of incest.[1] On June 11, 2014, Appellant was sentenced to an aggregate term of 10 years' and nine months' to 22 years' incarceration. He was determined not to be a sexually violent predator. Appellant filed a timely direct appeal, and this Court affirmed his judgment of sentence on June 16, 2015. *See Kerrick, supra*.

On May 31, 2016, Appellant filed a timely, counseled, PCRA petition, asserting several claims of ineffective assistance of his trial counsel(s).[2] A hearing was conducted on August 11, 2016. On August 17, 2016, the PCRA court issued an order and opinion dismissing Appellant's petition. He filed a timely notice of appeal, and also timely complied with the PCRA court's order

---

[1] 18 Pa.C.S. §§ 3126(a)(7), 3125(a)(8), and 4302, respectively.

[2] Appellant had two attorneys during the course of the pretrial and trial proceedings: Roger Laguna, Esq. (pretrial counsel), and R. Bruce Manchester, Esq. (trial and direct appeal counsel).

to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Herein, Appellant presents the following three issues for our review:

> 1. Did the PCRA court err in denying relief based on trial counsel's failure to preserve a potentially meritorious appeal issue where the Superior Court had already deemed the issue in question waived on direct appeal?
>
> 2. Did the PCRA court err in denying relief based on [Appellant's] claim of ineffective cross-examination of a key prosecution witness[,] where such witness testified at the PCRA hearing that her testimony did not present a full and accurate description of [Appellant's] alleged confession?
>
> 3. Did the PCRA court err in denying relief based on trial counsel's decision not to call any witnesses other than [Appellant] himself[,] where trial counsel based such decision on a grossly inaccurate understanding of the background information relevant to such decision?

Appellant's Brief at 2.

Preliminarily, we note that, "[t]his Court's standard of review from the grant or denial of post-conviction relief is limited to examining whether the lower court's determination is supported by the evidence of record and whether it is free of legal error." *Commonwealth v. Morales*, 701 A.2d 516, 520 (Pa. 1997) (citing *Commonwealth v. Travaglia*, 661 A.2d 352, 356 n.4 (Pa. 1995)). Where, as here, a petitioner claims that he received ineffective assistance of counsel, our Supreme Court has directed that the following standards apply:

> [A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42

- 3 -

Pa.C.S. § 9543(a)(2)(ii). "Counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him." [**Commonwealth v.**] **Colavita**, 606 Pa. [1,] 21, 993 A.2d [874,] 886 [(Pa. 2010)] (citing **Strickland**[ **v. Washington**, 104 S.Ct. 2053 (1984)]). In Pennsylvania, we have refined the **Strickland** performance and prejudice test into a three-part inquiry. **See** [**Commonwealth v.**] **Pierce**, [515 Pa. 153, 527 A.2d 973 (Pa. 1987)]. Thus, to prove counsel ineffective, the petitioner must show that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result. **Commonwealth v. Ali**, 608 Pa. 71, 86, 10 A.3d 282, 291 (2010). "If a petitioner fails to prove any of these prongs, his claim fails." **Commonwealth v. Simpson**, [620] Pa. [60, 73], 66 A.3d 253, 260 (2013) (citation omitted). Generally, counsel's assistance is deemed constitutionally effective if he chose a particular course of conduct that had some reasonable basis designed to effectuate his client's interests. **See Ali, supra**. Where matters of strategy and tactics are concerned, "[a] finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued." **Colavita**, 606 Pa. at 21, 993 A.2d at 887 (quotation and quotation marks omitted). To demonstrate prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." **Commonwealth v. King**, 618 Pa. 405, 57 A.3d 607, 613 (2012) (quotation, quotation marks, and citation omitted). "'[A] reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding.'" **Ali**, 608 Pa. at 86–87, 10 A.3d at 291 (quoting **Commonwealth v. Collins**, 598 Pa. 397, 957 A.2d 237, 244 (2008) (citing **Strickland**, 466 U.S. at 694, 104 S.Ct. 2052)).

**Commonwealth v. Spotz**, 84 A.3d 294, 311-12 (Pa. 2014).

Appellant first contends that his trial counsel, Attorney Manchester, was ineffective by incorrectly framing a challenge to the consolidation of Appellant's charges in Tioga County. As stated *supra*, two of Appellant's

charges (one count of incest and one count of aggravated indecent assault) stemmed from conduct committed in Carbon County, while his remaining crimes were committed in Tioga County. At trial, Attorney Manchester framed his challenge to the consolidation of Appellant's charges as a jurisdictional issue.[3] On direct appeal, this Court declared that "[i]ntercounty determinations are … a question of venue[,]" rather than jurisdiction. *Kerrick*, No. 1125 MDA 2014, unpublished memorandum at 3. Because Appellant "never challenged the Tioga County venue[,]" we concluded that he had waived his claim that his charges should not have been consolidated. *Id.*

Now, Appellant claims that Attorney Manchester acted ineffectively by failing to properly frame the challenge to the consolidation of the Carbon County charges in Tioga County as a venue issue, which ultimately resulted in that claim being waived on appeal. We accept that Appellant's underlying claim has arguable merit, and that Attorney Manchester had no reasonable basis for not framing the issue as one implicating venue, rather than jurisdiction. *See Commonwealth v. Bethea*, 828 A.2d 1066, 1074-75 (Pa. 2003) (stating that "[v]enue in a criminal action properly belongs in the

---

[3] Appellant does not cite to where in the record Attorney Manchester raised an objection to the consolidation of his charges. However, the Commonwealth and the PCRA court agree that Attorney Manchester presented a jurisdictional challenge to the consolidation of Appellant's charges below. *See* Commonwealth's Brief at 4; PCRA Court Opinion (PCO), 8/17/16, at 1.

- 5 -

place where the crime occurred[,]" and clarifying that courts of common pleas have subject matter jurisdiction over "[c]ontroversies arising out of violations of the Crimes Code").

Nevertheless, Appellant has failed to demonstrate that he was prejudiced by counsel's conduct. "To prevail on [a] claim that counsel erred in failing to challenge the propriety of venue … [a petitioner] must demonstrate that but for the failure of counsel the outcome of trial would have been different." *Id.* at 1076. In other words, "to establish prejudice flowing from trial counsel's failure to raise th[e] issue" of venue, the petitioner "must demonstrate that he was unable to receive a fair and impartial trial in the venue where the trial was held." *Id.*

Here, Appellant wholly fails to meet that burden. Similar to the petitioner in *Bethea*, Appellant makes no argument that "he suffered undue expense in appearing before the court in [Tioga] County, that he was unable to obtain the presence of witnesses or evidence related to his defense because of the location, that the Commonwealth engaged in forum shopping in order to achieve an advantage over the defense,[4] or that he was

---

[4] Appellant baldly states that he was, "in fact, … subject to an unconstitutional forum selection procedure in violation of the Sixth Amendment to the United States Constitution and Article I, § 9 of the Pennsylvania Constitution…." Appellant's Brief at 10. However, Appellant does not elaborate on this claim, or offer any explanation of why prosecuting the Carbon County charges in Tioga County gave the Commonwealth an advantage over the defense.

deprived of a fair and impartial trial." *Id.* at 1077. We also stress that Appellant does not argue that he was prejudiced by the consolidation because the Tioga County jury heard evidence regarding the Carbon County acts, which might not have occurred had the charges been tried separately. In sum, Appellant has not presented any developed argument to demonstrate that he did not receive a fair and impartial trial in Tioga County on the offenses which occurred in Carbon County. Accordingly, like the petitioner in *Bethea*, Appellant has failed to show any "prejudice from the error in venue," and his "ineffectiveness claim must be denied." *Id.*

Appellant next contends that Attorney Manchester was ineffective for failing to cross-examine Appellant's mother, Sarah Kerrick (hereinafter, "Sarah"), regarding "the specific details of her son's purported confession...." Appellant's Brief at 11. Briefly, Sarah provided a lengthy, pretrial statement to police in which she asserted, in pertinent part, the following:

> I sat down across from [Appellant] and told him [the victim] told me he put his hand on her in a sexual way and [I asked him] was it true. He said, "Yes, but I am not sure how they got there."

Sarah Kerrick's Written Statement, 2/6/14, at 4; *see also* PCRA Hearing, 8/11/16, at 38 (Commonwealth's entering Sarah Kerrick's statement into evidence as Commonwealth's Exhibit 1). At trial, Sarah testified about this same conversation with Appellant as follows:

> I went in, pulled the chair up across from him, and I said, ["]I got a phone call last night from [the victim,"] and he just put his head down and I said, ["]**she told me that you had been molesting her** and that you put your -- that she woke up and

- 7 -

your hands were in her underwear.["]  And I said[, "]please tell me that this is not true.["]  And he said, ["]I don't know.  I'm confused about the whole thing.["]  He said[, "]I'm confused about it.  I don't know how it happened.["]  I said, ["]but is it true?["] And he said, ["]yes."  He said … ["]it is true, but I don't know how it happened.["]

N.T. Trial, 2/19/14, at 102 (emphasis added).

Appellant now argues that while Sarah's *written* statement to police "made it clear that [Appellant's] confession was of an extremely limited nature and referred only to a single incident of inappropriate touching[,]" her *trial testimony* "was prejudicially vague in that she reported confronting [Appellant] with allegations both that he 'had been molesting [the victim]' and *also* 'that [he] put [his] - that [the victim] woke up and [his] hands were in her underwear.'"  Appellant's Brief at 11-12 (emphasis in original).  Appellant contends that,

> [g]rammatically, these are separate and distinct accusations.  The tense structure used by Sarah Kerrick in relation to the accusation of molestation connotes an ongoing course of conduct.  Sarah Kerrick also used the conjunction "and" to separate such allegation from the allegation regarding [Appellant's] placing his hands in [the victim's] underwear.  Furthermore, the latter part of Sarah Kerrick's statement uses a different tense to clearly connote a single instance.  In effect, if not by intention, Ms. Kerrick testified that she had confronted [Appellant] with two separate and distinct allegations.
>
> Sarah Kerrick's description of [Appellant's] response did not in any way elucidate whether it was directed only to the specific allegation of accidental inappropriate touching or also to the more general allegation of ongoing molestation….
>
> Nonetheless, instead of cross-examining Sarah Kerrick in such a way as to specifically clarify the extremely-limited [*sic*] extent of the purported confession, trial counsel instead just

"attempted to impeach her."  (N.T. [PCRA Hearing, 8/11/16,] at 88).

Appellant's Brief at 12.

Appellant's argument fails to convince us that Sarah's trial testimony was "prejudicially vague…."  *Id.*  Appellant hyper-technically analyzes the "tense structure" of Sarah's testimony about what *she said to him*, asserting that it is clear that she confronted him with "separate and distinct accusations."  *Id.*  Conversely, however, he goes on to argue that Sarah's testimony about *his response* should be loosely interpreted as an admission to *both* the "specific allegation of inappropriate touching" *and* "the more general allegation of ongoing molestation."  *Id.*  Appellant wholly ignores that in his response to Sarah's questions, he repeatedly used the singular term "it" - stating that, "**it** is true," and that he did not "know how **it** happened."  N.T. Trial, 2/19/14, at 102 (emphasis added).

Given that Sarah asked Appellant about a *specific* incident of abuse and that, in his response, he utilized the singular pronoun "it," we conclude that Sarah's testimony conveyed to the jury that Appellant's confession was limited to the one act putting his hands in the victim's underwear. Therefore, Appellant has not demonstrated that he was prejudiced by Attorney Manchester's failure to cross-examine Sarah Kerrick about the

ostensible discrepancy between her written statement and her trial testimony.[5]

Next, Appellant contends that Attorney Manchester acted ineffectively by failing to call two witnesses: Appellant's wife, Stephanie Kerrick (hereinafter, "Stephanie"), and his father, Robert Kerrick (hereinafter, "Robert").[6] "To establish that counsel was ineffective for failing to call a

_____

[5] We note that the PCRA court essentially concluded that Attorney Manchester expressed a reasonable basis for not cross-examining Sarah Kerrick about this alleged discrepancy. Specifically, the court reasoned:

> While [Attorney] Manchester did cross-examine Sarah at some length, the [c]ourt accepts his position that his cross-examination was limited by an extensive ten-page statement Sarah had previously given to the police, which apparently disclosed even more areas of concern, the exploration of which would have not been of benefit to [Appellant].

PCO at 3. The PCRA court does not cite to where in the record Attorney Manchester testified that this was his basis for not cross-examining Sarah Kerrick on the alleged disparity between her written statement and trial testimony. Our review of the record does not reveal that counsel offered this rationale at the PCRA hearing; rather, Attorney Manchester testified that he simply did not see Sarah's testimony as being inconsistent with her written statement. N.T. PCRA Hearing at 92. Accordingly, the court's characterization of counsel's reason for not cross-examining Sarah on this issue is not supported by the record. In any event, "this Court may affirm the decision of the PCRA [c]ourt if it is correct on any basis." *Commonwealth v. Hutchins*, 760 A.2d 50, 54 (Pa. Super. 2000) (citing *Commonwealth v. Pursell*, 749 A.2d 911, 917 (Pa. 2000); *Commonwealth v. Ahlborn*, 683 A.2d 632, 641 n.14 (Pa. Super. 1996)).

[6] Appellant also argued in his PCRA petition, that counsel ineffectively failed to call Sue McGinty to the stand at trial. However, in his appellate brief, he "concedes that a reasonable tactical decision could have been made not to use Ms. McGinty as a witness…." Appellant's Brief at 14 n.1. Accordingly,
*(Footnote Continued Next Page)*

- 10 -

witness, Appellant must demonstrate that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial."

*Commonwealth v. Washington*, 927 A.2d 586, 599 (Pa. 2007) (citation omitted).

Here, Appellant has failed to demonstrate the final prong of this test, *i.e.*, that the absence of testimony by Stephanie and/or Robert was so prejudicial that it denied him a fair trial.[7] First, in regard to how Stephanie's

_(Footnote Continued)_ _____

Appellant abandons his ineffectiveness claim pertaining to counsel's decision not to call Ms. McGinty as a defense witness. *Id.*

[7] Consequently, we need not assess the reasonableness of counsel's decision not to call Stephanie or Robert to the stand, despite that Appellant spends a significant portion of his argument on that prong of the ineffectiveness test. In particular, Appellant contends that counsel's grounds for not calling these witnesses cannot be considered as reasonable where, according to Appellant, counsel premised those decisions on incorrect beliefs about each witness. For instance, Appellant claims that counsel erroneously thought that he and Stephanie were having marital problems that may have made her a hostile witness. Additionally, Appellant maintains that Attorney Manchester mistakenly believed that Robert had a volatile relationship with Appellant and a seedy reputation in the community. The PCRA court essentially concluded that counsel acted reasonably by not calling these witnesses, based on his beliefs (mistaken or not) about them and their relationships with Appellant. *See* PCO at 3. Ultimately, we need not assess the correctness, or reasonableness, of counsel's decisions regarding these witnesses, as we conclude, for the reasons stated *infra*, that Appellant has not demonstrated that he was prejudiced by the omission of their testimony at trial. We reiterate that we may affirm the decision of the PCRA court on any basis. *See Hutchins*, 760 A.2d at 54.

testimony would have bolstered his defense, Appellant's entire argument is as follows:

> If called as a witness, Stephanie Kerrick could have testified about her personal direct knowledge of sleeping arrangements during [Appellant's] visits with his daughter, ([PCRA Hearing] at 45), and she could also have contradicted assertions made by the Commonwealth that [Appellant] showed overt favoritism for the alleged victim over her sister (**Id.** at 45-47). The lack of such testimony prejudiced the defense by leaving the Commonwealth's assertions uncontradicted by anyone other than [Appellant] himself, and it left [Appellant's] version of events uncorroborated.

Appellant's Brief at 15-16 (citation to the record omitted).

Initially, the record does not demonstrate what *specific* testimony Stephanie would have offered about the sleeping arrangements during her overnight trips with Appellant and the victim. While Stephanie did state that she "personally observed" where "people were sleeping" during these trips, she never testified about *what* those arrangements were. **See** PCRA Hearing at 45. Therefore, Appellant has failed to prove that Stephanie would have offered testimony to refute the Commonwealth's evidence, which demonstrated that Appellant and the victim had been sleeping in the same bed on certain occasions when he had abused her. **See** N.T. Trial, 2/19/14, at 26, 28.

Additionally, while Stephanie testified at the PCRA hearing that Appellant did not exhibit favoritism toward the victim, Appellant offers no developed discussion regarding how the absence of such testimony resulted in an unfair trial. More specifically, Appellant claims that, at trial, the

Commonwealth 'made assertions' that he favored the victim, yet he provides no citations to the record to support this argument. Without such argument and/or citations, we cannot examine how vital Appellant's purported 'favoritism' of the victim was to the prosecution's case, nor gauge how important Stephanie's testimony to the contrary would have been for Appellant's defense. Consequently, he has not demonstrated that an unfair trial resulted from Attorney Manchester's decision not to call Stephanie to the stand.

The same is true for counsel's decision not to call Appellant's father, Robert Kerrick, as a defense witness at trial. Again, Appellant claims that Robert's

> testimony could have been used to provide additional information about the circumstances of the visits between the alleged victim and [Appellant] (most of their contact took place at Robert Kerrick's home, (N.T. [PCRA Hearing, 8/11/16,] at 50)) and to contradict the assertions made as part of the Commonwealth's case that [Appellant] showed overt favoritism for the alleged victim over her sister. (*Id.* at 51). The lack of such testimony prejudiced the defense by leaving the Commonwealth's assertions uncontradicted by anyone other than [Appellant] himself, and it left [Appellant's] version of events uncorroborated.

Appellant's Brief at 15.

As with Appellant's argument regarding Stephanie's testimony, his claims to support the import and benefit of Robert's testimony are not sufficiently developed. Appellant does not elaborate on what "additional information" Robert could have provided "about the circumstances of the visits" between Appellant and the victim. *Id.* Additionally, he again fails to

- 13 -

cite to where in the record the Commonwealth offered evidence that he favored the victim, or argued that that fact demonstrated his guilt. Therefore, we cannot assess the import of Robert's testimony contradicting that purported evidence or argument. Consequently, Appellant's minimal argument has not convinced us that he received an unfair trial due to the absence of Robert's testimony.

In sum, having carefully reviewed Appellant's arguments, the record of his trial, and the record of the lengthy PCRA hearing, we conclude that Appellant has not demonstrated that Attorney Manchester acted ineffectively in any of the three ways asserted by Appellant. Accordingly, we affirm the PCRA court's order denying his petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/21/2017