J-A15019-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| BARRY E. GROVE | |
| | No. 1934 MDA 2016 |

Appeal from the PCRA Order dated November 22, 2016
In the Court of Common Pleas of Centre County
Criminal Division at No(s): CP-14-CR-0000873-2013

BEFORE: MOULTON, J., SOLANO, J., and MUSMANNO, J.

MEMORANDUM BY SOLANO, J.:                    **FILED JULY 05, 2017**

The Commonwealth appeals from the November 22, 2016 order issued by the Court of Common Pleas of Centre County that granted Appellee Barry E. Grove's request for discovery in connection with his Post-Conviction Relief Act (PCRA)[1] petition. We remand for the limited purpose of giving the PCRA court an opportunity to enter an order that would clarify whether this appeal is moot.

On April 23, 2013, Grove shot his dog, Anne, in his neighbor's yard. The neighbor, Sherry McCloskey, called the police. When they arrived, Grove said he shot the dog because she had killed his chickens. Anne was severely injured, but still alive, and the police euthanized her. The police checked Grove's criminal history and discovered that he had been convicted

---

[1] 42 Pa.C.S. §§ 9541-9546.

of criminal trespass in 1978. Under an amended provision of the Uniform Firearms Act that was in effect in 2013, 18 Pa. C.S. § 6105, Grove's 1978 conviction made it unlawful for him to own a gun. Therefore, in connection with the April 23, 2013 incident, Grove was charged with illegal possession of a firearm, in addition to the charge of cruelty to animals for the shooting of Anne.[2] The trial court severed the two charges.

In an earlier opinion, this Court described the procedural history of the firearms charge under Section 6105 of the Criminal Code as follows:

> On December 9, 2013, Grove filed a motion in *limine* requesting the trial court preclude the Commonwealth from providing any details regarding the animal cruelty charge at his jury trial. Thereafter, on January 8, 2014, and January 15, 2014, Grove filed an original and amended motion to dismiss the charge of persons not to possess firearms based upon his 1978 guilty plea to criminal trespass. He argued, *inter alia*, that: (1) at the time of his 1978 conviction, he was not prohibited from possessing a firearm; (2) he received no notice when the law was amended in 1995; and (3) the amendment should not apply to him retroactively. The Commonwealth filed its own motion in *limine* on January 20, 2014, seeking to preclude Grove from, *inter alia*, presenting a defense as to his ignorance of the law. On January 23, 2014, one day before Grove's scheduled jury trial, the trial court [Judge Bradley Lunsford] entered an order denying Grove's motions to dismiss, and granting the Commonwealth's motion in *limine*.

> In light of the trial court's ruling, Grove waived his right to a jury trial and proceeded to a bench trial [before Judge Lunsford] on January 24, 2014. That same day, the trial court entered a verdict of guilty on the charge of persons not to possess firearms. After the verdict, and upon the motion of the Commonwealth, the trial court revoked Grove's bail. Thereafter,

---

[2] 18 Pa.C.S. §§ 5511(a)(2.1)(A), 6105(a)(1).

Grove filed both a petition for bail pending appeal, and a motion for bail for emergency medical treatment.

On February 20, 2014, the trial court imposed a sentence of five to 10 years' imprisonment for Grove's conviction under Section 6105. Additionally, at the close of the hearing, the court denied Grove's outstanding motions for bail. Thereafter, Grove filed a timely post sentence motion, raising the same claims as in his pretrial motion to dismiss and his motion in *limine*, as well as challenging the court's discretion in revoking his bail.

While that motion was pending, Grove petitioned this Court for review of the trial court's orders denying bail pending appeal and for emergency medical treatment.

[On March 21, 2014, this Court denied review of the trial court's decision to deny bail pending appeal. After several orders from this Court regarding the request for bail for emergency medical treatment, the trial court explained that Grove would be furloughed for surgery.]

Thereafter, on June 12 and 16, 2014, the trial court conducted hearings on Grove's post-sentence motions. On June 16, 2014, the trial court entered an order denying Grove's post-sentence motions.

*Commonwealth v. Grove*, 1135 MDA 2014, at 3-7 (Pa. Super. July 28, 2015) (unpublished memorandum) (footnotes omitted), *appeal denied*, 130 A.3d 1287 (Pa. 2015).

Meanwhile, on March 12, 2014, Grove pleaded guilty to one count of cruelty to animals. That same day, Judge Lunsford sentenced him to nine months to two years' imprisonment on that charge, consecutive to his sentence for the firearms charge.

Grove filed a timely direct appeal from his judgment of sentence for the firearms conviction. On July 28, 2015, this Court affirmed the judgment

of sentence.[3]   On December 11, 2015, the Supreme Court of Pennsylvania denied Grove's petition for allowance of appeal.

On October 12, 2016, Grove filed his PCRA petition.   In it, Grove alleged that his trial counsel had been ineffective.   Grove raised eight claims in his petition, including a claim that trial counsel had failed to challenge an incorrect prior record score under the Pennsylvania Sentencing Guidelines, 204 Pa. Code §§ 303.1 *et seq.*, which resulted in imposition of a longer sentence than Grove should have received.   Grove's full list of claims was:

(1) Abrogation of the right to an impartial tribunal;

(2) Failure to move for recusal;

(3) Petitioner was not, as a matter of law, disqualified from possessing a firearm;

(4) Failure to raise Equal Protection claim;

(5) Failure to raise Second Amendment claim;

---

[3]   In his direct appeal, Grove claimed: (1) his prosecution constituted an improper retroactive application of the law; (2) his prosecution constituted an *ex post facto* application of the law; (3) the punishment for his crime was cruel and unusual punishment; (4) his prosecution for violation of Section 6105 contravened due process because Grove was not notified of the 1995 amendment to the statute which made him ineligible to possess a firearm; (5) the retroactive application of Section 6105 stripped Grove of the right to bear arms; (6) the trial court erred in concluding that Section 6105 was "essentially" a strict liability crime because the court determined that the Commonwealth was not required to prove Grove knew his possession of a firearm was prohibited; (7) the trial court erred in granting the Commonwealth's pre-trial motion in *limine*; (8) the trial court erred in denying Grove's request for jury instructions, thus precluding him from offering a defense that he was unaware he was violating Section 6105; and (9) the trial court abused its discretion in denying Grove bail following his conviction.

(6) Failure to challenge incorrect prior record score;

(7) Failure to challenge testimony of Sherry McCloskey; and

(8) Failure to present a defense under 3 P.S. § 328.2/infirm guilty plea.

PCRA Pet., 10/12/16, at 1-4.[4]  Grove's request for relief sought (1) discovery; (2) an expedited evidentiary hearing;[5] (3) a new trial; and (4) a new sentencing proceeding.  *Id.* at 6.

With respect to the first two claims in his petition, Grove alleged:

> Until exposed through Right to Know Law requests during the fall of 2014, Centre County District Attorney Stacy Parks-Miller was in the practice of communicating *ex parte* with former Centre County Judge Bradley Lunsford for the purpose of influencing his rulings on various matters at bar.  At times, Parks-Miller would "text" Judge Lunsford for this purpose.  In [Grove's] case, Parks-Miller allied herself with a social-media-based activist group called "Justice for Anne," "Anne" being the dog [Grove] shot for killing 150 of his chickens and between five and a dozen domesticated rabbits.  These activists declared [Grove] to be "sub human," characterized his counsel's efforts as "scum defending scum," and called for [Grove] to be "punished to the highest extent the law will allow."  In their Facebook posts, the activists recounted emailing Judge Lunsford about such matters as "why [Grove] needed the maximum penalty for

---

[4] Grove filed an amended PCRA petition on December 27, 2016, which added three claims: ineffective assistance of appellate counsel for failing to adequately develop his Second Amendment claim; ineffective assistance of trial counsel for failing to present the affirmative defense defined by 18 Pa.C.S. § 6105(a)(2)(i); and ineffective assistance of trial counsel for failing to move to quash the firearms charge on the basis that application of Section 6105 to Grove was an unlawful bill of attainder.

[5] Grove sought an expedited hearing because of his failing health (he has cancer) and "the manifest injustices visited upon [him] during this criminal action."  PCRA Pet. at 6.

what he did to Anne." The Facebook page recounts that activists received "a very understanding" response from Judge Lunsford.

The communications between the "Justice for Anne" activists and Judge Lunsford, standing alone, violated [Grove's] constitutional right to an impartial tribunal. An evidentiary hearing is required to determine whether Parks-Miller followed her customary practice of attempting to influence Judge Lunsford *ex parte* in this case.

\* \* \*

Trial counsel was aware that Judge Lunsford had been communicating with the "Justice for Anne" activists. His failure to move for recusal constituted ineffective assistance of counsel.

PCRA Pet. at 1-2. On the same day that he filed his petition, Grove filed a motion for discovery that sought evidence relating to (1) *ex parte* electronic communications between Judge Lunsford and Parks Miller and/or other members of the District Attorney's Office; and (2) Facebook and/or other media communications between Parks Miller and members of the public regarding Grove.

On November 18, 2016, the Commonwealth filed an Answer to Grove's Motion for Discovery, along with a Motion to Dismiss. The Commonwealth argued that Grove had not met the "exceptional circumstances" standard for PCRA discovery under Pa.R.Crim.P. 902.[6] On November 21, 2016, Grove filed a brief in support of his motion for discovery, averring that exceptional

---

[6] Rule 902 states, in pertinent part: "Except as provided in paragraph (E)(2) [relating to a defendant's first counseled petition in a death penalty case], no discovery shall be permitted at any stage of the proceedings, except upon leave of court after a showing of exceptional circumstances." Pa.R.Crim.P. 902(E)(1).

circumstances existed because (1) Judge Lunsford's former court reporter (Maggie Miller) stated in an affidavit that Parks Miller and Judge Lunsford texted each other during an April 2012 trial in **Commonwealth v. Randall Brooks** regarding issues that arose during that trial — conduct suggesting that they might also have done the same thing in this case; (2) while Grove's case was pending, Parks Miller made comments in conventional and social media "excoriating" Grove, which resulted in the creation of the "Justice for Anne" social media activist group that sought imposition of a maximum sentence for Grove; (3) these activists communicated *ex parte* with Judge Lunsford to urge him to impose the maximum penalty on Grove; and (4) phone records showed that on June 13, 2014, after the first day of the hearing on Grove's post-sentence motion, Judge Lunsford and Parks Miller exchanged 47 text messages, the content of which was unknown.  In particular, Grove sought:

> (1) discovery of all communications between members of the Centre County District Attorney's Office and Judge Lunsford during the entire temporal span of [Grove's] case; and (2) discovery of all communications between members of the Centre County District Attorney's Office and the "Justice for Anne" social media activist group during the entire temporal span of [Grove's] case.

Grove's Brief in Supp. of Mot. for Disc. at 4.

On November 22, 2016, the PCRA court, with Clinton County Court of Common Pleas Senior Judge J. Michael Williamson specially presiding,[7] held a hearing on Grove's motion for discovery. At that hearing, an employee of the Centre County Commissioner's Office, Julie Lutz, testified regarding records of telephone calls and text messages between Judge Lunsford and either District Attorney Parks Miller or Assistant District Attorney Nathan Boob (Parks Miller's co-counsel during Grove's trial). Lutz brought to the hearing records relating to such communications between May 2014 and December 2014.[8] She did not bring records regarding communications prior to May 2014 because they needed to be redacted, and she testified that she did not know if those records showed that there were phone calls between Parks Miller and Judge Lunsford prior to May 2014. N.T., 11/22/16, at 15-36. There was also testimony from Maggie Miller, Judge Lunsford's former court reporter, who stated (over a hearsay objection) that during the April 2012 trial of Randall Brooks, Judge Lunsford told her that Parks Miller had

---

[7] Judge Lunsford had retired in January of 2016.

[8] Grove's lawyer subpoenaed the records from Lutz. The records had been compiled previously, in response to a request made in the fall of 2014 under the Pennsylvania Right to Know Law, 65 P.S. §§ 67.101 to 67.3104, for communications between Judge Lunsford and personnel of the District Attorney's office in connection with a different case (**Commonwealth v. McClure**, Centre County No. CP-14-CR-1778-2012). In a later proceeding involving similar requests for communications involving other Centre County judges, the Commonwealth Court held that it was improper for the county to produce such records without first obtaining approval from an appropriate judicial open records officer. **See Grine v. County of Centre**, 138 A.3d 88 (Pa. Cmwlth.), **appeal denied**, 157 A.3d 483 (Pa. 2016).

been texting him to complain about his rulings in that case. N.T., 11/22/16, at 67-69.

On November 23, 2016, the PCRA court issued an order granting Grove's motion for discovery. That order allowed counsel for Grove to request from the appropriate Centre County officials:

1. . . . [A]ny records of text or phone messages for the time period beginning January 15, 2014 through March 16, 2014 and for the period beginning June 10, 2014 through June 18, 2014 between former Judge Lunsford and any member of the District Attorney's Office.

2. . . . [T]he production of any electronic device issued to Judge Lunsford, District Attorney Parks Miller, Assistant District Attorney Boob, and Assistant District Attorney [Lindsay] Foster[9] for the above periods.

Order, 11/23/16. The order further provided:

3. Defense counsel may request discovery from the Bellefonte Police Department concerning any downloading of phone or text messages of District Attorney Parks Miller related to this case only.[10]

4. Defense Counsel may request of the Office of Disciplinary Counsel and the Judicial Conduct Board, any material in the

---

[9] The phone records obtained through the Right to Know request showed that ADA Foster had exchanged numerous text messages with Judge Lunsford during the criminal trial in **Commonwealth v. McClure** in September 2014. The record in this appeal contains no evidence that Foster was involved in Grove's case.

[10] In January 2015, Parks Miller's phone was seized pursuant to a search warrant after she was accused of forgery in another matter. The statewide investigating grand jury judge later ruled that the warrant used to seize Parks Miller's phone was invalid. Parks Miller averred that the phone that was seized was not the one she used during Grove's trial.

possession of either agency which involves a downloading of any telephone or text messages regarding this case.

Any information received from the Office of Disciplinary Counsel or the Judicial Conduct Board shall be sent directly to the undersigned Judge for in-camera review prior to release to any of the parties.

*Id.*

That same day, the Commonwealth filed a notice of appeal from the PCRA court's discovery order. The Commonwealth stated it was appealing pursuant to Pa.R.A.P. 313 (collateral orders). When it filed its appeal, the Commonwealth had not yet received a written copy of the PCRA court's discovery order. The Commonwealth filed an amended notice of appeal, with the order attached, on December 1, 2016.[11]

On January 11, 2017, the PCRA court held a hearing on Grove's PCRA petition. The transcript for this hearing is sealed, but in an unsealed January 24, 2017 motion to this Court (discussed below), the Commonwealth represented that the hearing included presentation of evidence regarding telephone conversations between Judge Lunsford and the District Attorney's office. Also at that hearing, Grove's trial counsel and the person who prepared Grove's presentence investigation report testified

---

[11] On December 21, 2016, this Court issued an order directing the Commonwealth "to show cause within 10 days from the date of this Order, why the appeal should not be quashed as taken from an unappealable order and how this appeal satisfies the requirements of Pa.R.A.P. 313." On January 3, 2017, the Commonwealth filed a timely response, and on January 5, this Court discharged the rule to show cause and referred the issue of appealability to the merits panel.

about Grove's ineffective assistance of counsel claims. The hearing was adjourned and scheduled to continue on January 25, 2017.

On January 24, 2017, the day before the PCRA hearing was scheduled to resume, the Commonwealth filed in this Court an "Emergency Motion to Enforce Appellate Stay Under Pa.R.A.P. 1701." Referencing the discovery issues being pursued by Grove, the Commonwealth argued that, under Appellate Rule 1701, the lower court should not act on "these issues" until its appeal was resolved.[12] The Commonwealth noted that at the January 11, 2017 evidentiary hearing, Grove sought to elicit testimony about the same records that were the subject of the discovery order as to which it had filed its appeal.[13] Further, the Commonwealth averred that it had just learned that the PCRA court had scheduled a witness who had been called to testify at the January 11 hearing regarding the phone records to testify during the January 25, 2017 proceeding. The Commonwealth asked this Court to "issue an order enforcing an appellate stay pursuant to Pa.R.A.P. 1701 and directing the lower court to suspend any further proceedings, testimony, or document production in this matter until this . . . Court relinquishes jurisdiction." That same day, this Court issued the following order:

---

[12] Appellate Rule 1701(a) provides: "Except as otherwise prescribed by these rules, after an appeal is taken or review of a quasijudicial order is sought, the trial court or other government unit may no longer proceed further in the matter."

[13] The Commonwealth did not argue that the other testimony at the January 11 hearing was improper.

- 11 -

Upon consideration of the Commonwealth's "emergency motion to enforce appellate stay under Pa.R.A.P. 1701," filed in this Court on January 24, 2017 at 2:13 P.M., wherein the Commonwealth requested, in part, that this Court stay a trial court proceeding scheduled for January 25, 2017 at 10:00 A.M., the proceedings below in the trial court are hereby **STAYED** pending disposition of the above-captioned appeal.

Order, 1/24/17.

On January 25, 2017, the PCRA court filed an opinion and order dated January 23, 2017 that granted Grove's PCRA petition in part.[14] The court held that trial counsel was ineffective for failing to correct an error in Grove's prior record score at the time of sentencing, and it vacated Grove's sentences for both the gun and animal cruelty convictions. The PCRA court stated:

Defendant suggests counsel was ineffective in failing to correct an error in his prior record score at the time of sentencing. Trial counsel acknowledged that he believed the correct prior record score was a four (4), but failed to raise the issue. The Commonwealth contends the sentence imposed was not an illegal sentence, suggesting that even if the prior record score was a three (3), the imposed sentence of sixty (60) to one hundred twenty (120) months was within the fifty-four (54) to seventy-two (72) month standard minimum range. The Commonwealth suggests such questions regarding the discretion

_____

[14] It appears that the scheduled January 25, 2016 PCRA evidentiary hearing did not take place. At the time of the scheduled hearing, the PCRA court announced that it had filed its opinion. The PCRA court stated that its opinion was prepared on and dated January 23, 2017, prior to this Court's January 24 stay order. The PCRA court stated, "I have already decided this case[.] I don't think the Superior Court can tell me not to file an opinion and a decision which I have already reached." N.T., 1/25/17, at 3. The Commonwealth objected to the filing of the opinion and order, arguing that the PCRA court lost jurisdiction when the Commonwealth filed its notice of appeal on November 23, 2016. *Id.*

- 12 -

of the Sentencing Court are not cognizable in a post-conviction petition.

> We find no reasonable basis for trial counsel's failure to advise the Sentencing Court of the correct prior record score, which, on the basis of testimony presented by the Centre County Probation Department arguably was a four (4). Because the actual sentence was at the lowest level of the standard range, we are unable to say that the Sentencing Court would not have imposed a fifty-four (54) month minimum sentence had the prior record score been either a three (3) or a four (4). Under such circumstances, we find trial counsel to have been ineffective, vacate the sentences imposed on both counts, and direct that the matter be listed for resentencing.

PCRA Ct. Op. and Order, 1/25/17, at 4. The PCRA court further ordered that, pending resentencing, Grove be immediately released and placed on house arrest.

With regard to Grove's claims that he was denied the right to an impartial tribunal and that trial counsel was ineffective in failing to successfully move for recusal of Judge Lunsford — the claims as to which he sought the discovery at issue in this appeal — the PCRA court said:

> Unlike other cases in which this issue has been raised recently, the thrust of [Grove]'s argument involves only the effect of the alleged ex parte contacts on [Grove]'s sentences. With respect to the firearms charge, there were no factual issues in dispute and no evidentiary rulings beyond the constitutional issues presented to the trial [c]ourt. With respect to the Cruelty to Animals charge, [Grove] entered a guilty plea. Because . . . we are vacating [Grove]'s sentences, we find it unnecessary to further pursue the issue of alleged ex parte communications.

PCRA Ct. Op. and Order, 1/25/17, at 1. The PCRA court denied relief on all of Grove's remaining claims.

- 13 -

On January 25, 2017, the Commonwealth filed in this Court a "Motion for Emergency Stay of the Trial Court's Order Filed January 25, 2017." The Commonwealth alleged that the PCRA court had exercised jurisdiction in violation of this Court's January 24, 2015 order. The Commonwealth added, "the trial court actually lost jurisdiction on the matter on November 23, 2016 when the Commonwealth originally filed its appeal to the Superior Court." The Commonwealth requested that this Court "issue an order enforcing an appellate stay pursuant to Pa.R.A.P. 1701 and staying the trial court's order granting [Grove]'s PCRA and releasing [Grove] from prison." That same day, this Court issued an interim order that stated in pertinent part:

> The trial court's January 25, 2017 order is temporarily **STAYED**. As Appellee has not had a full opportunity to respond to the Commonwealth's motion, Appellee is directed to file with this Court a response to the Commonwealth's emergency motion within seven (7) days from the date of this Order.

Order, 1/25/17.

Grove filed timely responses to both the Commonwealth's January 24 and January 25 motions. In the latter response, Grove averred, among other things, that the Commonwealth's appeal of the discovery order was moot in light of the PCRA court's January 25, 2017 order granting partial relief. The Commonwealth filed a reply on February 2, 2017, arguing in part that the PCRA court's January 25, 2017 order was void because the PCRA court lacked jurisdiction after the Commonwealth filed its notice of appeal on November 23, 2016.

- 14 -

On February 1, 2017, Grove filed a motion to modify this Court's January 24, 2017 order, which had stayed proceedings in the trial court. Citing Pa.R.A.P. 1701(c),[15] Grove asked this Court to rescind the stay as to any PCRA claims not associated with the discovery order — that is, all except the first two claims in Grove's October 12, 2016 PCRA petition. The Commonwealth opposed Grove's motion.

On February 9, 2017, this Court issued an order (1) granting the Commonwealth's motion to stay the PCRA court's January 25, 2017 order "pending disposition of the above-captioned appeal," and (2) denying as moot Grove's motion to modify this Court's January 24, 2017 order. We further ordered that this matter be briefed and scheduled for argument on an expedited basis.[16]

_____

[15] Rule 1701(c) states:

> Where only a particular item, claim or assessment adjudged in the matter is involved in an appeal, or in a petition for review proceeding relating to a quasijudicial order, the appeal or petition for review proceeding shall operate to prevent the trial court or other government unit from proceeding further with only such item, claim or assessment, unless otherwise ordered by the trial court or other government unit or by the appellate court or a judge thereof as necessary to preserve the rights of the appellant.

[16] Upon ordering Grove's resentencing, the PCRA court's January 25, 2017 order provided, "This Order shall not constitute a final Order for purposes of appeal pursuant to Rule 910 of the Rules of Criminal Procedure until Defendant is resentenced," and it advised Grove of his right to appeal "from the final Sentencing Order to be entered in the future." PCRA Ct. Order, 1/25/17, ¶¶ 3-4. Nevertheless, on February 24, 2017, Grove appealed from
*(Footnote Continued Next Page)*

In this appeal, the Commonwealth raises the following issues:

I. Whether this Court has jurisdiction, under Pa.R.A.P. 313, over the Commonwealth's appeal from the PCRA court's grant of discovery with respect to:

> A. Phone records of communications between Judge Lunsford and any member of the Centre County DA's office between January 15, 2014 and March 16, 2014, and June 10, 2014 through June 16, 2014; and electronic devices belonging to Judge Lunsford, DA Stacy Parks Miller, ADA Boob, and ADA Foster;

> B. The fruits of an illegal forensic analysis of a cell phone once belonging to DA Parks Miller, a cell phone not used by Parks Miller during [Grove]'s trial;

> C. Material allegedly possessed by the Judicial Conduct Board and the Disciplinary Board.

II. Whether the PCRA court committed an abuse of discretion by granting [Grove]'s motion for discovery because [Grove] did not meet the Pa.R.Crim.P. 902(E)(1) exceptional circumstances standard permitting discovery in a non-capital PCRA proceeding.

Commonwealth's Brief at 6.

---

*(Footnote Continued)* ―――――――――――――

the PCRA court's January 25, 2017 order. *See Commonwealth v. Grove*, No. 358 MDA 2017. In that appeal, Grove argues, among other things, that the trial court erred in not conducting an evidentiary hearing on the issue of *ex parte* communications. He contends that had he been allowed to prove his claim of *ex parte* communications during the pretrial or trial proceedings in his case, the PCRA court would have had to vacate his convictions, not just his sentences. Grove stated that he filed the new appeal "[b]ecause this Court has not, to date, clarified the significance of [this Court's stay order] on the January 23/25, 2017 order of the PCRA court." Grove's Brief, No. 358 MDA 2017, at 9-10. During oral argument in this case, Grove's counsel repeated that explanation and argued that, despite his appeal from the January 25 order, the partial relief granted by that order renders his appeal in this case moot.

Before reaching the merits of the Commonwealth's issues, we must address whether this appeal is moot in light of the PCRA court's January 25, 2017 order granting Grove a new sentencing hearing. Our Supreme Court has explained:

> An accurate description of those circumstances which raise the issue of mootness is provided by Professor Gunther, who writes:
>
> > The cases presenting mootness problems involve litigants who clearly had standing to sue at the outset of the litigation. The problems arise from events occurring after the lawsuit has gotten under way — changes in the facts or in the law — which allegedly deprive the litigant of the necessary stake in the outcome. The mootness doctrine requires that "an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *G. Gunther*, *Constitutional Law* 1578 (9th ed. 1975).
>
> It is well established in this jurisdiction that this Court will not decide moot questions. As explained above, a legal question can become moot on appeal as a result of an intervening change in the facts of the case. For example, [a quo warranto action may be mooted by the expiration of the defendant's term of office; a contract action may be mooted by entry into a new superseding contract, and an action for possession of property may be mooted by a conveyance of the property].
>
> Similarly, an issue can become moot due to an intervening change in the applicable law.

*In re Gross*, 382 A.2d 116, 119-20 (Pa. 1978) (cited cases omitted); *see Commonwealth, Dep't of Envtl. Prot. v. Cromwell Twp., Huntingdon Cty.*, 32 A.3d 639, 651 (Pa. 2011); *In re Cain*, 590 A.2d 291, 292 (Pa. 1991); *Commonwealth v. Ahlborn*, 683 A.2d 632, 639 (Pa. Super. 1996) (*en banc*), *aff'd*, 699 A.2d 718 (Pa. 1997); *Commonwealth v. Dorler*, 588

- 17 -

A.2d 525, 526 (Pa. Super. 1991); *Graziano Constr. Co. v. Lee*, 444 A.2d 1190, 1193 (Pa. Super. 1982).

The PCRA court's January 25, 2017 opinion ordered that Grove be resentenced on grounds unrelated to the discovery issues that the Commonwealth seeks to present in this appeal. The Commonwealth's appeal therefore is moot insofar as it relates to the sentencing aspects of Grove's PCRA petition, as the PCRA court has announced that it plans to afford Grove relief with respect to his sentence without regard to any ultimate outcome regarding the Commonwealth's discovery issues.

However, Grove's PCRA petition did not just seek resentencing; Grove also sought a new trial to determine his guilt or innocence, at least with respect to the firearms charge (he pled guilty to the charge of cruelty to animals). The PCRA court opined that the discovery issues in this appeal are relevant **only** to Grove's sentence, and not to the issues of guilt or innocence, PCRA Ct. Op., 1/25/17, at 1, and the PCRA court held that, as a substantive matter, Grove is entitled to no relief under his petition except as to resentencing, PCRA Ct. Order, 1/25/17, ¶ 2. If that is correct, then there is no question that the discovery issues raised by the Commonwealth in this appeal clearly are moot, since they bear only on sentencing relief that Grove has already obtained. The PCRA court did not fully explain why it concluded that the discovery issues relate only to Grove's sentencing, but it apparently based its conclusion on the absence of disputed factual issues during the

proceedings at which Grove was convicted, making the chance of any prejudice resulting from *ex parte* communications between Judge Lunsford and District Attorney personnel during those proceedings slim. **See** PCRA Ct. Op., 1/25/17, at 1.[17]

During oral argument in this appeal, Grove's counsel expressed disagreement with the PCRA court's conclusion regarding the non-sentencing claims and suggested that he intends to pursue the effect of any *ex parte* communications on Grove's conviction in a separate appeal from those portions of the PCRA court's January 25, 2017 order that denied relief apart from sentencing.[18] Nevertheless, Grove takes the position that any such claim must be litigated in proceedings separate from the appeal that is now before us and that, insofar as this present appeal is concerned, the discovery issues presented by the Commonwealth are indeed moot. During oral argument, the Commonwealth also agreed that the PCRA court's January 25,

---

[17] As noted, Grove pleaded guilty to the charge of cruelty to animals. He contested the firearms charge by raising several legal defenses, but did not contest the factual evidence. This Court rejected Grove's legal challenges to the firearms charge in Grove's direct appeal. **See Grove**, 1135 MDA 2014, at 2, 7-32.

[18] As we have noted (**see** fn. 16, *supra*), Grove already has filed such an appeal, which is separately docketed in this Court at No. 358 MDA 2017. That appeal has not been consolidated with this one, and we therefore do not address it here, except to note that its filing after this Court had entered an order staying proceedings in the PCRA court and before the PCRA court entered a new sentencing order raises grave questions about whether that appeal is valid.

2017 order, if validly entered (an issue we address below), would render this appeal moot.

After considering the various positions of the parties, we conclude that the PCRA court's January 25, 2017 order has made such a change to this case that, in terms of a mootness analysis under Pennsylvania law, there no longer is such an extant case or controversy as would justify our continuation with this appeal. The Commonwealth's appeal raises substantial questions regarding the availability and permissible scope of discovery in PCRA cases — questions that are especially delicate because they involve discovery regarding communications with a judge. The appeal also raises important threshold questions regarding our jurisdiction to hear such a case under the collateral order doctrine. But the PCRA court's order for resentencing has removed any possibility that any decision we render in this case with respect to discovery from the Commonwealth can have any bearing on the sentencing aspect of Grove's petition. In addition, the PCRA court's dismissal of the parts of Grove's petition other than his request for resentencing has, at the least, made the prospect that any decision we render in this appeal will have any bearing on those non-sentencing issues quite attenuated. To succeed on the non-sentencing claims, Grove will have to show that the PCRA court erred on the merits in dismissing them, and that discovery from the Commonwealth is likely to lead to an increased chance of a new trial — an outcome that the PCRA court has now rejected.

Any such claim by Grove should be pursued, if at all, by a separate appeal from those parts of the PCRA court's January 25, 2017 order that denied relief on his non-sentencing claims. This is not such an appeal. We therefore agree with the views expressed by both parties during oral argument that the PCRA court's January 25, 2017 order renders this appeal moot.

The Commonwealth contends, however, that the PCRA court did not have jurisdiction to enter its January 25, 2017 order, both because the court was divested of jurisdiction by the filing of the Commonwealth's appeal in November 2016 and because we issued a stay order on January 24, 2017. The PCRA court apparently took the position that it was authorized to enter its order because it was granting relief on an aspect of the PCRA petition (the incorrect prior record score) that was not implicated by the Commonwealth's appeal, *see* Pa.R.A.P. 1701(c), and because it signed its order on January 23, 2017, a day before we entered the stay. We find it unnecessary to resolve this dispute. Suffice it to say that the jurisdictional questions attending the January 25, 2017 order raise serious doubts regarding the order's validity.

These doubts can readily be removed. After an appeal is taken, the Appellate Rules permit a trial court to "[t]ake any action directed or authorized on application by the appellate court." Pa.R.A.P. 1701(b)(5). Accordingly, because there is a substantial question whether the PCRA

court's January 25, 2017 order was invalid when entered, we remand the case to the PCRA court for the limited purpose of allowing it, within 14 days of entry of this memorandum, to either (1) re-enter its January 25, 2017 order, or (2) inform this Court of any reasons why it concludes that it should not do so.   The PCRA court shall supplement the certified record as appropriate.   If the PCRA court re-enters its January 25, 2017 order, this Court will issue an order quashing the Commonwealth's appeal as moot.   If the PCRA court does not reissue its January 25, 2017 order, we shall take such further action in this appeal as we conclude is appropriate.

Case remanded with instructions.   Panel jurisdiction retained.